1   James W. Morando (State Bar No. 087896)
        jmorando@fbm.com
2   Jeffrey M. Fisher (State Bar No. 155284)
        jfisher@fbm.com
3   Racheal Turner (State Bar No. 226441)
        rturner@fbm.com
4   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA  94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Plaintiff
    VOLTERRA SEMICONDUCTOR CORPORATION

8

9                UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12

13  VOLTERRA SEMICONDUCTOR                  Case No. CV-08-5129 JCS
    CORPORATION, a Delaware corporation,
14                                          **REDACTED VOLTERRA'S NOTICE OF
                                            MOTION AND MOTION FOR ENTRY OF
                Plaintiff,                  PRELIMINARY INJUNCTION;
15                                          MEMORANDUM OF POINTS AND
        vs.                                 AUTHORITIES**
16
    PRIMARION, INC. a Delaware              Date:    August 14, 2009
17  corporation, INFINEON                   Time:    9:30 a.m.
    TECHNOLOGIES AG, a German               Dept:    Courtroom A, 15th Floor
18  corporation, and INFINEON              Before:   Honorable Joseph C. Spero
    TECHNOLOGIES NORTH AMERICA
19  CORPORATION, a Delaware corporation,    Complaint Filed:   November 12, 2008
                                            Trial Date:   None set
20              Defendants.

21
    AND RELATED COUNTERCLAIMS
22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

VOLTERRA'S MOT. FOR PRELIMINARY
INJUNCTION / Case No. CV-08-5129 JCS

23666\1990963.1

1

**NOTICE OF MOTION AND MOTION**

2

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

3         NOTICE IS HEREBY GIVEN that on August 14, 2009, at 9:30 a.m. or as soon thereafter

4    as the matter may be heard, in Courtroom A of the above-entitled Court, located at 450 Golden

5    Avenue, San Francisco, California, before the Honorable Joseph C. Spero, Plaintiff Volterra

6    Semiconductor Corporation ("Volterra") will and hereby does move the Court pursuant to Federal

7    Rule of Civil Procedure 65 and 35 U.S.C. § 283 for entry of preliminary injunction, pending final

8    resolution of this action, enjoining Defendants Primarion, Inc. ("Primarion"), Infineon

9    Technologies North America Corp. ("Infineon N.A."), and Infineon Technologies AG ("Infineon

10   AG") (collectively, "Defendants"), their officers, directors, employees, agents, servants,

11   successors and assigns, and any and all persons acting in privity or concert with them from

12   infringing and/or inducing infringement of Claim 34 of Volterra's U.S. Patent No. 6,278,264 (the

13   "'264 Patent") and Claims 18 and 19 of U.S. Patent No. 6,462,522 (the "'522 Patent") by making,

14   using, importing, offering for sale, marketing, attempting to sell, or selling their flip chip

15   integrated power stage products, including the PX4640 and the PX4650.

16        A preliminary injunction should issue because Volterra is likely to succeed on the merits

17   by proving Defendants' infringement of these patent claims in this suit; Volterra will be

18   irreparably harmed if the preliminary injunction is not granted; and both the balance of hardships

19   between the parties and the public interest favor granting a preliminary injunction.

20        This motion is based on this Notice of Motion and Motion; the following Memorandum of

21   Points and Authorities; the supporting declarations of James W. Morando, Craig Teuscher, Paul

22   Latham, and Jeffrey M. Fisher, including the Expert Report of Dr. Thomas Szepesi attached as

23   Exhibit E thereto; Volterra's concurrently filed Motion for Summary Judgment of Infringement;

24   the Memorandum of Points and Authorities in support of that Motion; the pleadings and papers

25   ////

26   ////

27   ////

28   ////

VOLTERRA'S MOT. FOR PRELIMINARY
INJUNCTION / Case No. CV-08-5129 JCS

23666\1990963.1

1    on file with the Court in this action; and on such other matters as may be presented to the Court at

2    the time of the hearing.

3    Dated:  July 10, 2009                                    FARELLA BRAUN & MARTEL LLP

4

5                                                             By:_____/s/ Jeffrey M. Fisher_____
                                                                 Jeffrey M. Fisher
6
                                                              Attorneys for Plaintiff
7                                                             VOLTERRA SEMICONDUCTOR
                                                              CORPORATION
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF THE ISSUE TO BE DECIDED .......................................... 2

III.  STATEMENT OF FACTS ................................................................................. 2

      A.   Volterra's Innovative Flip Chip Integrated Power Products, Which
           Practice Its Patents, Are The Foundation To Volterra's Success........................... 2

      B.   Defendants' Copying Of Volterra's Flip Chip Power Stage Patents ................... 4

           ███████████████████████████████████████████████████
           ████████████████████████████████████ ................. 7

IV.   LEGAL STANDARD ......................................................................................... 8

V.    ARGUMENT ...................................................................................................... 9

      A.   Volterra Is Likely To Succeed On The Merits.................................................. 9

      B.   Volterra Will Be Irreparably Harmed If Defendants Are Not Preliminarily
           Enjoined. ........................................................................................................ 10

           1.   Volterra Invented And Developed Flip Chip Integrated Power
                Products, Created The Growing Demand For Those Products, And
                Has Never Licensed Its Patents............................................................ 11

           2.   ████████████████████████████████████████████
                ████████████████████████████████████████████
                ████████████████████████████████████████████
                ████████████████████████████████████████████
                ████████████████████████████████████████████
                ████████████████████████████████████████████
                ████████████████████████████████████████████
                ████████████████████████████████ .......................... 22

      C.   The Balance Of The Hardships Weighs Heavily In Favor Of Volterra .............. 23

      D.   The Public Interest Favors Granting Volterra A Preliminary Injunction............ 24

      E.   Defendants' Copying Of Volterra's Flip Chip Power Stage Patents
           Further Weighs In Favor Of An Injunction. ....................................................... 24

VI.   CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abbott Laboratories v. Andrx Pharms., Inc.,*
452 F.3d 1331 (Fed. Cir. 2006)................................................................ 11, 24

*Abbott Laboratories v. Sandoz, Inc.,*
544 F.3d 1341 (Fed. Cir. 2008)............................................................ 9, 10, 24

*Abercrombie & Fitch Co. v. Moose Creek, Inc.,*
486 F.3d 629 (9th Cir. 2007)........................................................................ 11

*Acumed LLC v. Stryker Corp.,*
551 F.3d 1323 (Fed. Cir. 2008)................................................................... 11

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
239 F.3d 1343 (Fed. Cir. 2001)..................................................................... 9

*Bio-Technology General Corp. v. Genentech, Inc.,*
80 F.3d 1553 (Fed. Cir. 1996)..................................................................... 11

*Broadcom Corp. v. Qualcomm Inc.,*
543 F.3d 683 (Fed. Cir. 2008)..................................................................... 20

*Canon, Inc. v. GCC Intern. Ltd.,*
263 Fed. Appx. 57 (Fed. Cir. 2008).......................................................... 18, 22

*Chamberlain Group, Inc. v. Lear Corp.,*
2007 U.S. Dist. LEXIS 23883 (N.D. Ill. Mar. 30, 2007)........................ 19, 20, 22

*eBay Inc. v. MercExchange, LLC,*
547 U.S. 388 (2006)..................................................................................... 11

*Elantech Devices Corp. v. Synaptics, Inc.,*
2008 WL 1734748 (N.D. Cal. Apr. 14, 2008) ............................... 9, 11, 23, 24

*Eli Lilly & Co. v. Teva Pharms. USA, Inc.,*
2009 U.S. Dist. LEXIS 34330 (S.D. Ind. Apr. 22, 2009) ............................. 20

*In re Etter,*
756 F.2d 852 (Fed. Cir. 1985)..................................................................... 10

*EyeTicket Corp. v. Unisys Corp.,*
155 F. Supp. 2d 527 (E.D. Va. 2001)....................................................... 13, 22

*EZ Gard Indus., Inc. v. XO Athletic Co.,*
2008 U.S. Dist. LEXIS 33483 (D. Minn. Apr. 23, 2008) ............................. 19

*H.H. Robertson Co. v. United Steel Deck, Inc.,*
820 F.2d 384 (Fed. Cir. 1987)....................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
    609 F. Supp. 2d 951 (N.D. Cal. 2009) ........................................................................... 20

*New England Braiding Co., Inc. v. A.W. Chesterton Co.*,
    970 F.2d 878 (Fed. Cir. 1992) ...................................................................................... 10

*PHG Techs., LLC v. Timemed Labeling System, Inc.*,
    2006 U.S. Dist. LEXIS 66828 (M.D. Tenn. Dec. 5, 2005) ........................................... 23

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996) ......................................................................... 11, 13, 21

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
    2008 U.S. Dist. LEXIS 100539 (D. Del. Dec. 12, 2008) .............................................. 13

*Proctor & Gamble Co. v. Kraft Foods Global, Inc.*,
    549 F.3d 842 (Fed. Cir. 2008) ...................................................................................... 10

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
    237 F.3d 1359 (Fed. Cir. 2001) .................................................................................... 10

*Reebok International Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994) ...................................................................................... 11

*Saes Getters, S.p.A. v. Ergenics, Inc.*,
    816 F. Supp. 979 (D.N.J. 1992) .................................................................................... 24

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006)..................................................................................... 22

*Syntex (USA) LLC v. Apotex, Inc.*,
    2006 U.S. Dist. LEXIS 34608 (N.D. Cal. May 18, 2006) ............................................ 24

*Toro Co. v. Textron, Inc.*,
    703 F. Supp. 417 (W.D.N.C. 1987) .............................................................................. 24

*Trading Techs. International, Inc. v. eSpeed, Inc.*,
    2008 U.S. Dist. LEXIS 86953 (N.D. Ill. May 22, 2008) .............................................. 12

*Warrior Sports, Inc. v. STX, L.L.C.*,
    2008 U.S. Dist. LEXIS 21387 (E.D. Mich. Mar. 19, 2008)..................................... 22, 23

**FEDERAL STATUTES AND RULES**

35 U.S.C.
    § 282 ............................................................................................................................. 10
    § 283 ............................................................................................................................... 8

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    Plaintiff Volterra Semiconductor Corporation ("Volterra") brings this Motion to enjoin

4    the infringement of Claim 34 of Volterra's U.S. Patent No. 6,278,264 (the "'264 Patent") and

5    Claims 18 and 19 of U.S. Patent No. 6,462,522 (the "'522 Patent") (collectively, the "Flip Chip

6    Power Stage Patents") by Defendants Primarion, Inc. ("Primarion"), Infineon Technologies

7    North America Corp. ("Infineon N.A."), and Infineon Technologies AG ("Infineon AG")

8    (collectively, "Defendants").[1]  Volterra will in all likelihood succeed on the merits.  Indeed,

9    Volterra has concurrently filed a Motion for Partial Summary Judgment of Infringement

10   establishing that Defendants are making, using, marketing, offering for sale, and selling flip chip

11   integrated power products (the PX4640 and PX4650) that infringe these claims.  The discovery

12   adduced to date has revealed that Defendants' infringing products copy the technology disclosed

13   and claimed in Volterra's patents, which are presumed valid and enforceable.



14

15

16

17

18

19

20

21

22

23

24

25

26

27   ─────────────────
[1]  Volterra contends that Defendants' integrated power products infringe additional claims of the '264 and '522 Patents, as well as certain claims of U.S. Patent No. 6,713,823 ("the '823

28   Patent"), but those claims are not the subject of this Motion.

1    Given Volterra's substantial likelihood of success on the merits and irreparable harm,

2  and that Defendants have other competing non-infringing products they can continue to offer to

3  sell, the balance of the hardships between the parties and the public interest strongly favor

4  granting the injunction. Accordingly, Volterra requests that the Court enjoin Defendants'

5  ongoing infringement pending resolution of the remaining issues in this case.

6  **II.    STATEMENT OF THE ISSUE TO BE DECIDED**

7    1.    Should Defendants be preliminarily enjoined from making, using, offering to sell,

8  marketing, and selling the PX4640 and the PX4650, which are at least substantially likely to

9  infringe Claim 34 of the '264 Patent and/or Claims 18 and 19 of the '522 Patent?

10  **III.   STATEMENT OF FACTS**

11    Volterra is a Fremont-based company founded as a start-up in 1996 by a group of U.C.

12  Berkeley engineering graduate students. Declaration of Craig Teuscher In Support Of Volterra's

13  Motion for Entry of Preliminary Injunction ("Teuscher Decl.") ¶ 2. Volterra has enjoyed

14  considerable success and growth as a direct result of its innovative efforts in developing flip chip

15  integrated power products and the market for them, although it is still a very small company

16  compared to its competitors, such as the Infineon Defendants. *Id.* ¶¶ 2 & 9 (Volterra's 2008 net

17  revenue was $104.2 million); Morando Decl., Ex. B at VLTR3245 (Infineon's FY 2008 net

18  revenue was over $6 billion). Volterra's core business is the development and sale of small and

19  efficient voltage regulator components, referred to as "flip chip integrated power products."

20  Teuscher Decl. ¶ 3. These products, which are designed with Volterra's patented and

21  proprietary technology, provide a stable, controlled voltage used to power elements found in

22  computer systems, such as microprocessors in high performance servers, graphics processors,

23  digital signal processors, and memory. *Id.*

24  **A.    Volterra's Innovative Flip Chip Integrated Power Products, Which Practice
       Its Patents, Are The Foundation To Volterra's Success.**

25

26    Volterra's flip chip integrated power products offer significant advantages in terms of

27  efficiency, performance, and density as compared to the prior generation of voltage regulators.

28  *Id.* ¶ 4. Through the ingenuity and hard work of its engineers over many years, and a substantial

1    commitment to research and development, Volterra has developed innovative techniques for

2    integrating high power switches, and other circuitry, on a single integrated circuit ("IC") chip.

3    *Id.* More specifically, Volterra's '264 Patent and '522 Patent are directed to Volterra's

4    techniques for providing a chip with high power switches in an efficient "flip chip" package.

5    *Id.*; Declaration of Jeffrey M. Fisher In Support Of Volterra's Motion for Entry of Preliminary

6    Injunction ("Fisher Decl."), Exs. C & D.

7         Volterra's flip chip integrated power products, which practice the inventions taught in its

8    patents, are Volterra's core products.  Teuscher Decl. ¶ 5.

9

10

11

12

13

14

15

16

17        Until Defendants' recent introduction of their infringing products, Volterra was the ***only***

18   company that had ever successfully developed and offered these products.  *Id.* ¶ 6;

19                                                                                             The

20   alternative to Volterra's products, offered by each of Volterra's competitors (including

21   Defendants and several other large technology companies), are the lower cost so-called

22   "discrete," "discrete MOSFET," or "DrMOS" solutions, which are voltage regulators where the

23   high power switches and their driver are provided on ***separate*** IC chips.[3]  Teuscher Decl. ¶ 6;

24

25   [2] All deposition testimony cited herein is attached as exhibits to the Declaration of James W.

26   Morando In Support Of Volterra's Motion for Entry of Preliminary Injunction ("Morando Decl.").

27   [3] The DrMOS solutions are slightly different from the discrete or discrete MOSFET solutions in that the separate IC chips are combined into a single package (but ***not*** on a single IC chip).

28   Teuscher Decl. ¶ 6.

VOLTERRA'S MOT. FOR PRELIMINARY                    3                          23666\1990963.1
INJUNCTION / Case No. CV-08-5129 JCS

1    ███████████. These "discrete" products are not alleged to infringe Volterra's patents.

2    Volterra's "integrated" method of providing efficient high-power switches, and other

3    circuitry, on a single IC chip in a flip chip package is superior because it offers better system

4    efficiency and performance and allows a total regulator system solution that takes up far less

5    room on the motherboard. Teuscher Decl. ¶ 7; ████████████████████████

6    ████████████████████████. Although discrete solutions typically cost less than

7    Volterra's integrated solution, they do not offer the same efficiencies or performance and they

8    take up much more room on the motherboard. Teuscher Decl. ¶ 7; ████████████

9    ████████████████████. In fact, absent using the technology taught and

10   claimed in Volterra's patents, it is impossible to achieve the efficiency, high performance, and

11   space-saving advantages of Volterra's flip chip integrated power products. Teuscher Decl. ¶ 7.

12        Volterra has never licensed its patents, and it does not intend to license them. *Id.* ¶ 8.

13   Instead, Volterra invested a substantial amount of time, money, and hard work inventing,

14   researching, developing, and proving the viability of its flip chip integrated power products. *Id.*

15   It has also invested in sales and marketing efforts to develop the market for its flip chip

16   integrated power products and communicate to prospective customers the advantages that its

17   technology offers over traditional discrete solutions. *Id.*

18        As a result of the advantages of Volterra's integrated solution, as well as Volterra's

19   investment in marketing efforts to develop the market for its products, Volterra has had growing

20   success in the marketplace and demand for its flip chip integrated power products has been

21   increasing. *Id.* ¶ 9. Volterra's flip chip integrated power products have transformed Volterra

22   from a small start-up company such that its net revenues have grown from $15.7 million in 2002

23   to $104.2 million in 2008. *Id.*

24   **B.    Defendants' Copying Of Volterra's Flip Chip Power Stage Patents.**

25        Defendants have sought to take improper advantage of Volterra's efforts and success by

26   copying Volterra's technology and offering their own flip chip integrated power products which

27   infringe Volterra's patents. Until recently, Defendants sold only the traditional discrete

28   solutions. ███████████████████████████████████████████

VOLTERRA'S MOT. FOR PRELIMINARY              4                          23666\1990963.1
INJUNCTION / Case No. CV-08-5129 JCS





, in April 2008,

Infineon purchased Primarion

Morando Decl., Ex. HH;

1

2

3     Infineon acquired Primarion for cash consideration of $50 million "plus a contingent

4  performance-based payment of up to $30 million, in order to further strengthen [Infineon's]

5  activities in the field of power management applications."  Morando Decl., Ex. LL.  The

6  reference to "power management applications" includes the infringing integrated flip chip power

7  stages.

8

9

10

11

12

13     In sum, Defendants developed their infringing products with full knowledge of and based

14  on their thorough study of Volterra's patents, products, and technology, and are now marketing

15  and attempting to sell their infringing products to Volterra's own key customers.



16

17

18

19

20

21

22

23

24

25

26  [4] Volterra first sent Defendants a letter on October 14, 2008, demanding that they cease and
   desist from selling their infringing power stage products.  Letter from J. Fisher to R. Van Dell
27  (Oct. 14, 2008) Fisher Decl., Ex. W.  When Defendants refused, Volterra filed the instant suit on
   November 12, 2008.  After suit was filed, the parties engaged in settlement discussions in
28  December 2008 – January 2009, which were unsuccessful.  Morando Decl. ¶ 42.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



23   **IV.    LEGAL STANDARD**

24          The Patent Act grants a patent holder the right to seek a preliminary injunction to enjoin

25   infringement of its patent during the pendency of an infringement suit.  35 U.S.C. § 283.  The

26   _____

27   [5]

28

1   purpose of a preliminary injunction is to protect the patent holder's rights while the lawsuit is

2   pending. *Elantech Devices Corp. v. Synaptics, Inc.*, 2008 WL 1734748, *5 (N.D. Cal. Apr. 14,

3   2008); *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008).

4   "Preliminary injunctions are thus warranted to deny potential infringers the 'opportunity to

5   practice an invention during the notoriously lengthy course of patent litigation.'" *Elantech*

6   *Devices*, 2008 WL 1734748, at *5 (quoting *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820

7   F.2d 384, 390 (Fed. Cir. 1987)).

8        The Federal Circuit has explained that four factors are relevant in determining whether to

9   grant a motion for preliminary injunction: (1) the likelihood of the patent holder's success on

10   the merits of the litigation; (2) whether the patent holder is likely to be irreparably harmed if the

11   preliminary injunction is not granted; (3) the balance of hardships between the parties; and

12   (4) the impact of a preliminary injunction on the public interest. *Abbott Labs.*, 544 F.3d at 1344.

13   While no one factor is dispositive, the patent holder must prove both likelihood of success on the

14   merits and irreparable harm to obtain a preliminary injunction. *Amazon.com, Inc. v.*

15   *Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). In this case, all four factors

16   weigh in favor of granting Volterra a preliminary injunction.

17   **V.    ARGUMENT**

18        **A.    Volterra Is Likely To Succeed On The Merits.**

19        Volterra has concurrently filed a Motion for Partial Summary Judgment of Infringement

20   ("MSJ"), which is incorporated herein by reference. Volterra's MSJ and the Expert Report of

21   Dr. Thomas Szepesi (Fisher Decl., Ex. E) establish Defendants' direct and indirect infringement

22   of Claim 34 of the '264 Patent and Claims 18 and 19 of the '522 Patent and the reason Volterra

23   is certainly likely to prevail on the merits of its infringement claims. To obtain a preliminary

24   injunction, of course, Volterra does not need to meet the heightened summary judgment

25   standard, but need only show that it is reasonably *likely* to prevail on the merits of its patent

26   infringement claims. Moreover, to support the issuance of a preliminary injunction, the Court

27   need only find that Volterra is reasonably likely to prevail as to any *one* of the three separate

28   claims of patent infringement that Volterra is relying on here and as to which it has moved for

VOLTERRA'S MOT. FOR PRELIMINARY          9                     23666\1990963.1
INJUNCTION / Case No. CV-08-5129 JCS

1    summary judgment.

2        The claims of each of Volterra's patents are also entitled to a statutory presumption of

3    validity. 35 U.S.C. § 282. As the Federal Circuit stated in *Abbott Labs*: "[i]n determining, for

4    preliminary injunction purposes, the likelihood that patent invalidity would be established at

5    trial, the district court evaluates the factual and legal arguments in light of the presumptions and

6    burdens that will inhere at trial, viz., that '[a] patent shall be presumed valid . . . . The burden of

7    establishing invalidity of a patent or any claim thereof shall rest on the party asserting such

8    invalidity.'" 544 F.3d at 1346 (quoting 35 U.S.C. § 282); *see also New England Braiding Co.,*

9    *Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992). Accordingly, unless and until

10   Defendants come forward with clear and convincing evidence establishing the invalidity of each

11   of the three claims of Volterra's patents that support this Motion, they are each presumed valid.

12   *Abbott Labs.*, 544 F.3d 1341, 1364-68 (Fed. Cir. 2008); *Purdue Pharma L.P. v. Boehringer*

13   *Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001).[6]

14       Volterra is therefore likely to succeed on the merits of its patent infringement claims.

15   **B.    Volterra Will Be Irreparably Harmed If Defendants Are Not Preliminarily**
16       **Enjoined.**

17       Absent an injunction prohibiting Defendants from selling their infringing products during

18   the pendency of this litigation, Volterra will likely suffer irreparable harm. Indeed, because

19   Volterra has established that it is likely to succeed on the merits, irreparable harm is presumed.

20   As Judge Breyer held in *Elantech Devices*, "'a strong showing of likelihood of success on the

21   merits coupled with continuing infringement raises a presumption of irreparable harm to the

22   patentee. . . .' This presumption in patent infringement suits arises because 'the principal value of

23   a patent is its statutory right to exclude,' therefore, 'the nature of the patent grant weighs against

24

25   [6] The fact that the Patent and Trademark Office has (as it routinely does) granted Defendants' *ex*
     *parte* reexamination petitions on the Flip Chip Power Stage Patents does not affect the statutory
26   presumption of validity. *See Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842,
     848 (Fed. Cir. 2008) ("[A] requestor's burden to show that a reexamination order should issue
27   from the PTO is unrelated to a defendant's burden to prove invalidity by clear and convincing
     evidence at trial."); *In re Etter*, 756 F.2d 852, 858 (Fed. Cir. 1985) (reexamination proceedings
28   "should not circumvent the burden placed on an infringer during litigation").

VOLTERRA'S MOT. FOR PRELIMINARY              10                          23666\1990963.1
INJUNCTION / Case No. CV-08-5129 JCS

1  holding that monetary damages will always suffice to make the patentee whole.'" 2008 WL

2  1734748, at *8 (quoting *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994)).[7]

3       Irreparable harm is not only presumed here, but the evidence strongly demonstrates that

4  Volterra faces the threat of likely and substantial irreparable harm if Defendants' infringement is

5  not enjoined.  Since the "essential attribute of a patent grant is that it provides a right to exclude

6  competitors from infringing the patent," courts recognize that infringement may cause a patent

7  holder harm that cannot be completely remedied through money damages. *Acumed LLC v.*

8  *Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008).  Factors such as loss of sales or market

9  share, loss of goodwill/reputation, brand erosion, harm to customer relationships, and price

10 erosion each support a finding of irreparable harm since it may be impossible to calculate their

11 monetary worth at the end of the case with a reasonable degree of precision.  *See, e.g., Bio-*

12 *Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (holding that

13 loss of revenue, goodwill, and research and development opportunities constitute irreparable

14 harm); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (stating that loss

15 of market opportunities cannot be quantified or adequately compensated, and such loss is

16 evidence of irreparable harm). ████████████████████

17          1.    **Volterra Invented And Developed Flip Chip Integrated Power**
                  **Products, Created The Growing Demand For Those Products, And**
18                **Has Never Licensed Its Patents.**

19       As discussed above, Volterra invented, designed, and developed a completely new

20 product which has enjoyed growing commercial success. Teuscher Decl. ¶¶ 4 & 9.  Though

21 more costly, Volterra's flip chip integrated power products offer significant advantages in terms

22 of efficiency, performance, and density than the traditional discrete solutions. *Id.* ¶ 7.  In

23 addition to its significant efforts and investment in research and development, innovation, and

---

[7] The Federal Circuit has not squarely addressed the presumption of irreparable harm for
preliminary injunctions following *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388 (2006), but it
has implied that the presumption still exists. *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d
1331, 1347 (Fed. Cir. 2006) ("[W]e conclude that Abbott has not established a likelihood of
success on the merits.  As a result, Abbott is no longer entitled to a presumption of irreparable
harm.").  Further, federal courts in the Ninth Circuit have applied the presumption post- *eBay*.
*See Elantech Devices*, 2008 WL 1734748, at *8; *see also Abercrombie & Fitch Co. v. Moose
Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007) (trademark infringement case).

1   risk taking to design and develop its products, Volterra also invested and worked hard over a

2   period of many years to market, promote and educate its potential customers about the

3   advantages of its flip chip integrated power solution over discrete solutions.  *Id.* ¶¶ 4, 8.  This

4   effort has now paid off, allowing Volterra to develop close and trusting business relationships

5   with the small group of customers which have, for many applications, moved away from

6   discrete solutions and decided to work with Volterra to use its flip chip integrated power

7   products instead.  *Id.* ¶ 8.

8          Choosing to invest in developing its own products and creating a growing demand for

9   those products, Volterra has never licensed its patents (*id.*),

10

11                  .  Thus, until Defendants' recent infringing activities, Volterra was the only company

12   that had ever successfully developed and offered a flip chip integrated power product, and the

13   customers' only alternative to Volterra's technology was a much larger and lower-performing

14   discrete solution from a number of vendors.  *Id.* ¶ 6;

15

16

17

18

19

20

21

22

23

24

25

26

27



28          In *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2008 U.S. Dist. LEXIS 86953 (N.D. Ill. May

1    22, 2008), the court granted a permanent injunction, finding that the defendant's infringement

2    would inflict irreparable harm by eroding the plaintiff's brand name, market share, reputation

3    and goodwill. *Id.* at 2-9. The court reasoned that where, as here, the plaintiff's product was the

4    "heart and soul" of its business, "the existence of the infringing products in the marketplace

5    causes irreparable harm to [the patent holder's] market share and goodwill in the industry." *Id.*

6    at 7-8. The court stated that "where a patentee has built a successful business around core

7    patented technology, an infringing competitor in the same marketplace causes irreparable harm

8    to the patentee." *Id.* at 8; *see also Polymer Techs.*, 103 F.3d at 976 ("Years after infringement

9    has begun, it may be impossible to restore a patentee's ... exclusive position by an award of

10   damages and a permanent injunction. Customers may have established relationships with

11   infringers. The market is rarely the same when a market of multiple sellers is suddenly

12   converted to one with a single seller by legal fiat.").[8]



---

[8] Other courts have similarly held that an infringer's competition with a patent holder's core
products is likely to cause irreparable harm, justifying an injunction. *See Power Integrations, Inc.
v. Fairchild Semiconductor Int'l, Inc.*, 2008 U.S. Dist. LEXIS 100539, at *4 (D. Del. Dec. 12,
2008) (granting permanent injunction, finding irreparable harm to plaintiff's market share,
goodwill, and reputation where plaintiff was a "specialized company and the sale of chips with the
patented features account[ed] for approximately 90% of [the plaintiff's] revenue" and defendant
was a direct competitor); *EyeTicket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527, 549 (E.D. Va.
2001) (granting preliminary injunction, finding that plaintiff was more likely to suffer irreparable
harm because its sole line of business was the market and technology of its licensed product).





<hr />

[9] Sales of Volterra's and Defendants' products are made via "design wins" for the development and production of final products that will incorporate their proposed components. Teuscher Decl. ¶ 10. For example, competition, bidding, and decision-making for components to be included in a new server platform design typically occur about twelve to eighteen months before the new server is manufactured and made available to end users. *Id.* For graphics cards, design decisions typically occur about six to nine months before the new graphics card goes into production. *Id.* ¶ 11. Competition for a projects is "won" or "lost" when components are selected in the design stage to be incorporated into a series of prototype builds as part of the product development cycle referred to as the "design in" phase. *Id.* ¶ 10. These component selection decisions in the early stages of the design phase are referred to in the industry as design "wins" or "losses" because, absent unanticipated problems, the selected components will be used in the finished server. *Id.* While the bulk of the revenue from a server design win is not realized until at least a year later during the manufacturing of the server, the "loser" is effectively locked out of the project throughout this time. *Id.* ¶¶ 10, 12.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





23606\1990963.1

*See, e.g., Broadcom Corp. v.*

*Qualcomm Inc.*, 543 F.3d 683, 702-03 (Fed. Cir. 2008) (affirming district court's grant of

permanent injunction, agreeing that plaintiff would suffer irreparable harm and damages would

be inadequate to compensate for the loss of "design wins" to the defendant's chipset).  As stated

by Judge Whyte in *Hynix Semiconductor Inc. v. Rambus, Inc.*, loss of a design win is not

compensable by money damages because the patent holder is effectively

> shut out of the "innovation loop." This prevents [the patent holder] from working
> closely with the users of its technology and hampers [its] ability to identify
> technical problems and direct its research efforts to solve them. . . .  [The patent
> holder's] exclusion is precisely the type of harm that money damages cannot
> remedy.  Losing at the design stage also harms [the patent holder's] ability to
> cultivate the goodwill it might have garnered had its design been adopted.  This
> loss of potential goodwill caused by [the patent holder's] loss of market share
> unquantifiably impacts its business relationships going forward.

609 F. Supp. 2d 951, 982 (N.D. Cal. 2009).

*See*

1  *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1381-83 & n.9 (Fed. Cir. 2006) (affirming

2  grant of preliminary injunction where patent holder forced to offer discounted rates and price

3  concessions after accused infringer's product entered the market and also finding "additional

4  factors that established irreparable harm, including loss of goodwill, the potential reduction in

5  work force, and the discontinuation of clinical trials"); *Chamberlain Group*, 2007 U.S. Dist.

6  LEXIS 23883, at *19-20, 23 (finding irreparable harm and granting preliminary injunction

7  where accused infringer's lower prices had already caused intense pricing pressure from

8  customers, a price concession to patent holder's largest customer, and strain on customer

9  relationships, and finding that continued infringement would likely cause further price erosion

10  and loss of goodwill).[13]



[13] *See also Canon, Inc*, 263 Fed. Appx. at 62 (affirming grant of preliminary injunction, stating "[d]ue to the difficulty (if not impossibility) of determining the damages resulting from price erosion and loss of market share, an award of money damages would not be sufficient."); *Warrior Sports, Inc. v. STX, L.L.C.*, 2008 U.S. Dist. LEXIS 21387, *34 (E.D. Mich. Mar. 19, 2008) (granting preliminary injunction, finding price erosion, loss of customer loyalty, and loss of market share, which were all likely to be caused by the defendant's sale of the infringing products at a substantially lower price, was not readily translated into money damages).

VOLTERRA'S MOT. FOR PRELIMINARY          22          23666\1990963.1
INJUNCTION / Case No. CV-08-5129 JCS

1

2

3

4

5     **C.**    **The Balance Of The Hardships Weighs Heavily In Favor Of Volterra.**

6     The hardship to Volterra from Defendants' continuing infringement clearly outweighs

7 any harm to Defendants from an injunction.

8

9

10

11     Defendants are part of a large diversified business that will not be

12 significantly harmed by the issuance of an injunction that would only bar them from selling

13 infringing integrated power products. Morando Decl., Exs. FFF at VLTR3250-251 (Infineon

14 "market[s] a broad range of semiconductors . . . used in a wide variety of microelectronic

15 applications") & GGG at VLTR2821 (Infineon has "29,100 employees worldwide" and a

16 "global presence").

17     Moreover, both Infineon and Primarion have other, non-infringing products that they can

18 continue to offer to sell and sell. *See, e.g.,* Morando Decl., Ex. GGG;

19     Defendants sold only

20 discrete solutions prior to their introduction of their infringing products in Fall 2008. Teuscher

21 Decl. ¶ 6. Any monetary harm to Defendants resulting from not being able to sell their infringing

22 products is therefore outweighed by the strong likelihood that Volterra will suffer substantial and

23 irreparable harm, as discussed above, if the preliminary injunction is not issued. Thus, the balance

24 strongly favors Volterra. *Elantech Devices*, 2008 WL 1734748, at *10 ("Synaptics, as the larger

25 company with multiple touchpad products, would not be forced out of business or even out of the

26 touchpad market if the preliminary injunction is granted. But if the preliminary injunction is not

27 granted Elantech's patent could lose its value over the course of litigation. Therefore the balance

28 of hardships favors Elantech."); *PHG Techs., LLC v. Timemed Labeling Sys., Inc.*, 2006 U.S. Dist.

1  LEXIS 66828, at *57 (M.D. Tenn. Dec. 5, 2005) (holding balance tipped in favor of smaller

2  company that was dependent on sales of its patented goods as compared to larger company whose

3  sales of infringing products represented a relatively small portion of its overall sales).

4         **D.**     **The Public Interest Favors Granting Volterra A Preliminary Injunction.**

5           Because Volterra has demonstrated both that the '264 and '522 Patents are likely

6  infringed, valid, and enforceable, and that Volterra will be irreparably harmed if an injunction

7  does not issue, the public interest favors granting the injunction. *Abbott Labs. v. Sandoz, Inc.*,

8  544 F.3d 1341, 1362 (Fed. Cir. 2008) ("The statutory period of [patent] exclusivity reflects the

9  congressional balance of interests, and warrants weight in considering the public interest.");

10  *Elantech Devices*, 2008 WL 1734748, at *10 ("The 'public is best served by enforcing patents

11  that are likely valid and infringed.'") (quoting *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d

12  1331, 1348 (Fed. Cir. 2006)); *Syntex (USA) LLC v. Apotex, Inc.*, 2006 U.S. Dist. LEXIS 34608

13  (N.D. Cal. May 18, 2006) ("[T]he public interest strongly favors enforcement and protection of

14  patent rights.").

15         **E.**     **Defendants' Copying Of Volterra's Flip Chip Power Stage Patents Further**
                **Weighs In Favor Of An Injunction.**

16

17          As discussed at pages 4-7 above, ████████████████████

18  ████████████████ and is yet another factor that weighs in favor of granting a preliminary

19  injunction. *See Toro Co. v. Textron, Inc.*, 703 F. Supp. 417, 420 (W.D.N.C. 1987) (copying

20  supported finding that public policy weighed in favor of granting preliminary injunction); *Saes*

21  *Getters, S.p.A. v. Ergenics, Inc.*, 816 F. Supp. 979, 987 (D.N.J. 1992) (stating, in discussion of

22  equitable considerations, "In favor of granting a preliminary injunction is the fact that . . . it

23  appears that defendant . . . deliberately set out to copy plaintiff's invention and incorporate

24  minor deviations to avoid infringement.").

25  **VI.**    **CONCLUSION**

26          For the foregoing reasons, Volterra respectfully requests that the Court preliminarily

27  enjoin Defendants, their officers, directors, employees, agents, servants, successors and assigns,

28  and any and all persons acting in privity or concert with them, from infringing and/or inducing

VOLTERRA'S MOT. FOR PRELIMINARY
INJUNCTION / Case No. CV-08-5129 JCS        24                23666\1990963.1

1  infringement of Volterra's U.S. Patent No. 6,278,264 and/or U.S. Patent No. 6,462,522 by

2  making, using, importing, offering for sale, marketing, attempting to sell, or selling their flip

3  chip integrated power products, including the PX4640 and the PX4650.

4  DATED:  July 10, 2009                        FARELLA BRAUN & MARTEL LLP

5

6                                               By:_____/s/ Jeffrey M. Fisher_____
                                                    Jeffrey M. Fisher
7

8                                               Attorneys for Plaintiff
                                                VOLTERRA SEMICONDUCTOR
9                                               CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VOLTERRA'S MOT. FOR PRELIMINARY              25                          23666\1990963.1
INJUNCTION / Case No. CV-08-5129 JCS