1                                          Pages 1 - 29

2                        UNITED STATES DISTRICT COURT

3                       NORTHERN DISTRICT OF CALIFORNIA

4            BEFORE THE HONORABLE MAGISTRATE JOSEPH C. SPERO

5   Volterra Semiconductor,            )
                                       )
6               Plaintiff,             )
                                       )
7     vs.                              )   NO. C. 08-5129 JCS
                                       )
8   Primarion, Incorporated,           )
                                       )   San Francisco,
9               Defendant.             )   Friday
                                       )   June 4, 2010
10  _____   )   9:30 a.m.

11                    **TRANSCRIPT OF PROCEEDINGS**

12  **APPEARANCES:**

13  **For Plaintiff          Farella, Braun & Martel**
                             **235 Montgomery Street, 30th Floor**
14                           **San Francisco, California  94014**
                        **BY:  JEFFREY M. FISHER**
15                           **BRIAN J. KEATING**
                             **JUNE TAI**
16                           **JAMES W. MORANDO**

17  **For Defendant          McDermott, Will & Emery**
                             **3150 Porter Drive**
18                           **Palo Alto, California  94304**
                        **BY:  VERA M. ELSON**
19                           **TERRENCE P. MCMAHON**
                             **DANIEL RAYMOND FOSTER**

20

21

22

23

24  Reported by: Lydia Zinn, Official Reporter
                 U. S. District Court

25

1              **P R O C E E D I N G S**

2  **JUNE 4, 2010 9:30 A.M.**

3          **THE CLERK:**  You may be seated.  Calling case

4  C.08-5129, Volterra Semiconductor Corporation versus Primarion.

5          Counsel, please state your appearances.

6          **MR. MORANDO:**  James Morando.  Along with me,

7  Jeff Fisher, Brian Keating, and June Tai, of Farella Braun and

8  Martel, on behalf of the plaintiff, Volterra.

9          **MR. MC MAHON:**  Terry McMahon, for Infineon.

10          **MS. ELSON:**  Vera Elson, for Infineon.

11          **MR. FOSTER:**  Brian Foster, for Infineon.

12          **THE COURT:**  All right.  So, to the *Fobbs* people who

13  are sitting in the back, there's going to be two parts to our

14  event today when we get to the case.  One will be you all

15  sitting around a conference room down the hall -- a conference

16  table down the hall and negotiating, you know, the proposal to

17  coördinate discovery in the case.  What that means:  What are

18  the core depositions that are going to occur; how the notice is

19  going to occur; that kind of stuff.

20          And the others is the other things that are addressed

21  in the -- in the discovery conference papers; or at least some

22  of them.

23          My suggestion is that you wait through this patent

24  case, and then we talk, and then you do that meet-and-confer,

25  because I think it would be useful to talk first; but if you'd

1  rather for the next half hour or whatever it is meet and

2  confer, we can get you down to a conference room.

3              Do you have a preference?

4          **MS. PRICE:**  Yes.

5          **THE COURT:**  Yes, Ms. Price.

6          **MS. PRICE:**  I would prefer to get started as soon as

7  possible.

8          **THE COURT:**  Okay.  Well, then, just sit tight.  Okay.

9              So on the Volterra matter, I got the gift from the

10 plaintiffs, as we all did, a couple days ago.  Of course, I've

11 read every word of the 20- or 30,000 pages of it; but one thing

12 does occur to me.  And I went through it and -- with an eye

13 towards the issues on which defendants had sought more

14 particularized information on the structures, the practice, the

15 invention.  And it occurred -- and it looked like this was a

16 better job, and that if I gave the defendants a 30(b)(6) on

17 this subject, that would end up being plenty of information.

18              Why shouldn't I just do that:  Deny the motion to

19 preclude, grant a 30(b)(6) on the subject of these

20 interrogatories, so that you can go through this and say, "I

21 don't really understand where this picture's taken from" --

22 that sort of thing -- and solve the problem?

23              Why shouldn't I do that?

24          **MR. FOSTER:**  Your Honor, Dan Foster, on behalf of

25 Infineon.

```
 1          It's too little, too late.  30(b)(6) is -- is a
 2  start, but we wanted and needed this discovery a year ago.  As
 3  you know, we haven't read all 20,000 pages yet, but we're
 4  working our way through it.  We believe that there are
 5  deficiencies already identified in what they've given us.  We
 6  will probably need further documentary discovery; a 30(b)(6)
 7  down the road after that.
 8          Dumping this on us two weeks before the discovery
 9  cutoff is just improper.  We properly sought this discovery.
10  They knew we were seeking this discovery a year ago.  Your
11  Court order was very clear that they should have produced this,
12  and they didn't.  They waited.  And the wait sandbagged us.
13  Now, all of a sudden at the last minute, they dumped it all on
14  us.
15          THE COURT:  Let me talk about the sandbagging.  Tell
16  me exactly what discovery you did, separate from these
17  interrogatories, to identify the structures that correspond to
18  the invention and these 82 products.
19          MR. FOSTER:  Well, we -- in addition to the
20  interrogatories, we also sought documents.  We sought the layer
21  plot information, which they have now partially provided to us.
22  One of the deficiencies that we've identified in the production
23  is --
24          THE COURT:  So that's done separately, right?
25          We're talking about interrogatory responses.  We're
```

1    not talking about prior document requests in which they

2    produced layer plots, right?

3            **MR. FOSTER:**  No.  At issue here is just the

4    interrogatories.

5            **THE COURT:**  So you sought layer plots.

6            **MR. FOSTER:**  And once that was obtained, we were

7    going to take a deposition to discuss the documents; discuss

8    the interrogatory responses.

9            **THE COURT:**  Yeah.

10           **MR. FOSTER:**  We just haven't gotten to that yet.

11           **THE COURT:**  You could have taken it anyways, right?

12   I mean, you got the layer plots.  You could have said, "I want

13   somebody who can tell me exactly what the structures are.

14   That's my subject."

15           **MR. FOSTER:**  We never got the layer plots.  The layer

16   plots are here right now.

17           **THE COURT:**  Why didn't you complain about the layer

18   plots?  Why am I sitting on a motion that says, "Layer plots,"

19   and I can do that six months ago, instead of, at the end of

20   discovery, a preclusion motion?  But you see my point.  My

21   point is:  You weren't entirely without tools.  And, having not

22   availed yourself of the tools, I don't think that it's

23   necessarily the right answer that they get to put in no

24   evidence on a reasonably important point in their case.  That

25   seems like a pretty extreme remedy.

```
 1        MR. FOSTER:  Well, it is; but we believe their

 2  conduct has been extreme as well.  The burden is on them to

 3  support their contention that 82 products practice their

 4  inventions.

 5        THE COURT:  Yes, but you know my view on contention

 6  interrogatories, because I ordered you two weeks ago to answer

 7  some contention interrogatories.  And my view is:  Those get

 8  answered at the end.  They are the summation.  They are the:

 9  We want to make sure that we've got every piece of evidence

10  that you think supports your case, so that we can preclude it

11  later if you haven't identified for us.  They come at the end.

12  So I don't know why it's so extreme.

13        I -- it is -- I take a piece of your -- of your

14  meaning to be correct.  They should have answered these fully.

15  No question about it.  They answered them improperly.

16        The question is whether or not, as a result of that

17  particular conduct, I should preclude; because when they

18  supplemented back in July or whenever it is, if you had brought

19  to this Court's attention, what I would have said is, "Okay.

20  Supplement them," or, "Okay.  Supplement them by the end of

21  discovery."

22        Why now should I preclude them, when they are, in

23  fact, producing the information?

24        MR. FOSTER:  Sure.  Well -- and I'd like to, in a

25  minute, defer to Ms. Elson, who knows more of the specifics on
```

1   these particular issues; but I think as an initial matter, the

2   document issue and the production of documents really is part

3   and parcel with the interrogatories.  You raised it yourself,

4   your Honor, at the July 13th hearing last year that the

5   documents are required to be able to understand the

6   interrogatory responses.

7           So it really is all wrapped up in one.  And we were

8   availing ourselves.

9           **THE COURT:**  I'm not buying that argument.  I'm not

10  buying that argument, because you never -- if you filed a

11  motion to get the layer plots, then we would have addressed it.

12  In fact, we've addressed layer plot motions at several points

13  along the way here; but I don't know that it's legitimate to

14  wait until now, and then say, well, you can't produce anything;

15  you can't put anything in.

16          **MR. FOSTER:**  Let me defer to Ms. Elson.  I think she

17  wants to make an additional point.

18          **THE COURT:**  Yes.

19          **MS. ELSON:**  To answer your Honor's question, we have

20  been diligent in pursuing this information.  What we had

21  hoped -- and were -- we were to the point of drafting a joint

22  letter on the documents.  What we'd hoped is that these

23  interrogatory responses would give us the necessary detail.

24          The problem I'm seeing -- I've only had today -- is

25  that they are --

```
 1            Imagine multiple layers, all on top of each other.
 2   They don't give us the necessary detail, which means the next
 3   step is to move ahead to get the documents we requested back in
 4   June, which is specific layers and specific areas --
 5            THE COURT:  I understand what you would have liked,
 6   in terms of these contention interrogatories.  You've known for
 7   some time.  However, they're contention interrogatories, so I
 8   don't know that that's a good answer.
 9            Why haven't you asked -- have you asked me before to
10   make them give you layer plots for these devices, or the
11   zoomed-in layer plots for these devices?
12            MS. ELSON:  We did ask for the layer plots for the
13   composites.  And at the hearing, your Honor said, as to the
14   more detail, "Meet and confer."
15            We did that.  We sent them a document, saying "We
16   want exactly these layers and these zoomed-in areas," as they
17   did to us.  And we provided those, back in June, to them, which
18   is why they were able to do their infringement contentions a
19   month later.  We have been meeting and conferring, pressing
20   them, trying to get this additional detail.
21            THE COURT:  Since when?
22            MS. ELSON:  Since whenever was the last hearing on
23   the motion-to-compel part of this interrogatory.  So we asked
24   for that.  We have a document-specific request for that.
25            THE COURT:  So ten months ago, or something?
```

1         **MS. ELSON:**  Correct.  And then we were hoping that --

2   we have met and conferred on that, and asked for very specific

3   layers, which, since we didn't get the detail, we'll now, at

4   least, need those, in order to tell.  Because these are

5   three-dimensional structures, you can't tell from what is, in

6   effect, an X ray, instead of a CT scan.

7         **THE COURT:**  No.  I understand that.  And so you've --

8         **MS. ELSON:**  Yeah.

9         **THE COURT:**  -- identified for them the specific

10  zoom-in plot that you want for each of the devices?

11        **MS. ELSON:**  Exactly.  We did that for them.

12        And we asked, in return, the same thing:  Very

13  certain layers; not all.  Specific layers, and specific

14  zoomed-in areas.  We have not received those.  And the next

15  step is to move to compel those, since we didn't get that

16  detail in these interrogatory responses, if that's where your

17  Honor's going.

18        **THE COURT:**  Mm-hm.  And if you get that information,

19  and presumably the opportunity to ask somebody about it, will

20  you have what you expected to have from the interrogatories?

21        **MS. ELSON:**  We believe that would do it, your Honor.

22  And I think it would take, possibly, more than one day to

23  question someone on 82 different products.

24        **THE COURT:**  I wouldn't be surprised.  It may be more

25  than one person.

1          **MS. ELSON:**  Yeah, correct.

2          **THE COURT:**  Okay.  Let me hear from Volterra.

3          **MR. MORANDO:**  The last point first, I guess,

4    your Honor.  With respect to their requests for additional hard

5    copy of the layer plots --

6          **THE COURT:**  Mm-hm.

7          **MR. MORANDO:**  -- the last discussion we had with them

8    on that topic was in October.  We've heard nothing about that

9    topic.

10          **THE COURT:**  What about -- will you produce them?

11          **MR. MORANDO:**  Well, where that ended up was the --

12    what they were asking for, we estimated, would cost $250,000 to

13    produce.  And we said, "If you want them and you're willing to

14    pay that, we'll give them to you."  That was where the last

15    conversation -- that's where the conversation ended.

16          I would tell you, however, that in the binders that

17    we provided, we gave them the layers that are at issue with

18    regard to the elements of the asserted claims; namely, the

19    silicon layer.  There's a layout plot for that in there, and

20    for the top layer or bottom, depending upon whether it's upside

21    down or not.

22          **THE COURT:**  Right.

23          **MR. MORANDO:**  But the layer with the pads and all --

24    we've also given them that.  They're in the binders for every

25    product already.

```
1              The other thing I would add to correct -- and to
2    respond to the Court's inquiry of defendant's counsel regarding
3    what discovery have they pursued, the other thing that they did
4    and have completed is a Rule 30(b)(6) deposition.  It was a
5    deposition notice --
6          THE COURT:  I understand, but they didn't have this
7    before the deposition (indicating).
8          MR. MORANDO:  No, but they did have the last set of
9    interrogatory responses and --
10         THE COURT:  Those were useless.  I've actually read
11   them.  You can't tell what is where from that, unless you
12   actually know the layout of the product in advance.
13         MR. MORANDO:  At a minimum, it is the fact that they
14   did take and complete the deposition on a topic, which was --
15   the verbiage of the topic was identical to Interrogatory 8, on
16   July 25th, 2009.  And whether that was sufficient or not is
17   another matter, but certainly they didn't do anything since
18   then to ask for a further deposition or to pursue this issue.
19   So --
20         THE COURT:  Okay.
21         MR. MORANDO:  And they had, by the way, at that --
22   before that deposition, they had available to them all of the
23   composite layers, which was the only thing they asked for at
24   the last hearing.  And then we went off to meet and confer
25   about anything further.
```

1          **THE COURT:**  Okay.  So your view is -- because I'm

2     going to ask, I want to make sure I get the question right for

3     Ms. Elson -- is that you have produced the layout plots, the

4     zoomed-in layers that you contend cane the elements of each of

5     the claims of the invention?

6          **MR. MORANDO:**  That's accurate.  We did two things.

7     We showed them the layer itself, with a box around, where we

8     took the zoom-in out of --

9          **THE COURT:**  Mm-hm.

10         **MR. MORANDO:**  -- and then had the zoom-in itself,

11    which establishes the existence of the elements.  And that's

12    there for all 82 products, except one where there was a

13    hard-drive crash, and we don't have those design documents; but

14    even as to that product, since it's a derivative of another,

15    we -- the structure is the same, and we have the images for the

16    other product.

17         **THE COURT:**  Okay.  So, Ms. Elson, can you answer

18    whether you agree with that?

19         **MS. ELSON:**  Not quite, your Honor.  What we got from

20    Volterra last fall was only the top-level composite plot, which

21    is every single layer --

22         **THE COURT:**  Right.

23         **MS. ELSON:**  -- on top of each other.  So you can't

24    discern what's in an individual layer.

25          If we look -- and we've only had 24 hours to look at

1   one hard copy, but if you look at the VT1195S1 tab --

2          **THE COURT:**  I don't have --

3          **MS. ELSON:**  You know, it's hard for me to --

4          But there's a --

5          These figures, if you look at them, they're

6   multicolor.  Each color's a layer.  They've stacked, again, all

7   layers on top of each other, which obfuscate what's in any

8   particular layer.

9          **THE COURT:**  In one picture?

10         **MS. ELSON:**  Correct.

11         **THE COURT:**  Can you hand that up, so I can see it?

12         (Whereupon a document was tendered to the Court)

13         **MS. ELSON:**  Sure, absolutely.

14         This is behind the VT1195S1 tab.  I think they're all

15  pretty similar.

16         And so what we asked for in the last meet-and-confer

17  last fall was only specific layers -- we put it in a document

18  for them -- and specific zoomed-in areas, so we could contest

19  these contentions.

20         **THE COURT:**  Well, I understand that.

21         **MS. ELSON:**  Yeah.

22         **THE COURT:**  And I'm -- I'm slightly on a different

23  point, but this plot that I'm looking at --

24         **MS. ELSON:**  Mm-hm.

25         **THE COURT:**  -- has more than one layer on it?

1          **MS. ELSON:**  Oh, absolutely.

2          **THE COURT:**  So these elements that are identified,

3   they're outlined in various ways, and identified.  They are on

4   different layers?

5          **MS. ELSON:**  Each color is a different layer.

6          And because they're on top of each other, you really

7   can't tell where the color necessarily goes underneath another

8   color.  They haven't labeled the different colors as to what

9   they are.

10         On the computer, each company has a different

11  convention about what layer is what color, or what "fill code,"

12  as they call it.

13         **THE COURT:**  Yeah.

14         **MS. ELSON:**  And so we don't know what their internal

15  convention is.  They didn't provide us with that.  And so you

16  can't tell what's what, fundamentally, without getting the

17  specific detail we've been asking for since last fall.

18         **THE COURT:**  And -- and separating these layers adds

19  what to your analysis?  I mean, you've got -- they've

20  identified structures.

21         **MS. ELSON:**  Separating.  Well --

22         **THE COURT:**  How does that happen?

23         **MS. ELSON:**  They put a label, but we don't know

24  exactly the boundaries of that particular structure, because

25  each one is beneath another.  So you need to have specific

1  layers; not all of them on top of each other.

2          And you need to have specific zoomed-in areas that we

3  know where they are in the chip.  We provided this information,

4  your Honor, to them back on June 5th, at their request.

5          And we have not had reciprocity from them on this.

6          **THE COURT:**  All right.

7          **MS. ELSON:**  That's what we would need to take the

8  deposition properly.

9          **THE COURT:**  Okay.  You can stand up.

10          What is -- I mean, I'm looking at this picture.  And

11  she says it is multiple layers.

12          **MR. MORANDO:**  Which slide are you looking at,

13  your Honor?

14          **THE COURT:**  I'm at -- it's page 8.  What tab is it?

15          **MR. MORANDO:**  I have 11951S.

16          **THE COURT:**  I don't have it.  Is that the tab?

17          **MS. ELSON:**  It -- unfortunately, the individual pages

18  aren't numbered.

19          **THE COURT:**  Yeah.  I know.  It's 1195S1?

20          **MS. ELSON:**  Yeah.

21          **MR. MORANDO:**  Right.  And Slide 6, your Honor.

22          **THE COURT:**  Eight is the page, I think.

23          **MS. ELSON:**  So it's the equivalent of looking down on

24  a building, trying to tell what's on the second floor of a

25  ten-story building.

1          **MR. MORANDO:**  Wait.  Let's start with the --

2          **MS. ELSON:**  Here we go (indicating).

3          **MR. MORANDO:**  So this particular slide is only there

4   to demonstrate that there are connections between the layers.

5   One of the elements of the patent is that they're electrically

6   connected.  That's the only purpose.  That's the only element

7   that is demonstrated by this slide.

8          **THE COURT:**  Uh-huh.

9          **MR. MORANDO:**  If you start from the beginning of the

10  slides that are in for this product.

11         **THE COURT:**  Right.

12         **MR. MORANDO:**  Slide 1 is the full chip on the silicon

13  layer, right?

14         Then you go to Slide 2.  And it shows you the

15  alternating pattern for the high-side switch.  And then Slide 3

16  shows you the alternating pattern of doped regions, and the

17  gates for the high-side switch.

18         **THE COURT:**  Are those -- Ms. Elson, you've got those

19  pictures in front of you.  Are those single layers?

20         **MS. ELSON:**  No, your Honor.  Any time you see more

21  than one color, that's more than one layer.  Each layer is a

22  separate fill code or color.

23         **MR. MORANDO:**  It's just not accurate -- what she's

24  saying.  Slide 1 is one layer.  It's the silicon layer.

25         **THE COURT:**  All right.  Well, so maybe the convention

1   is different?  I mean, you know, I have no way of judging that

2   question.

3            MS. ELSON:  Is Slide 1 this one?  The Slide 1 is a

4   top level of all layers turned on, every color, every layer of

5   the entire chip.  So this is like a Google map of L.A.  You

6   can't tell anything.  This is just for the top level.

7            MR. MORANDO:  That's not accurate, your Honor.

8            MS. ELSON:  This -- it says "full chip."  This is the

9   very top.  Every layer's a different color.

10           MR. MORANDO:  That's not accurate.  It says, "silicon

11  level."  It refers to the silicon level; the base level where

12  the silicon is.

13           MS. ELSON:  That's not right.

14           THE COURT:  Yeah.  Okay.  I don't know what that

15  means.  And I don't know who's right.  And my suspicion is that

16  it will actually take someone inside to tell who's right on

17  that subject.

18           You had something you wanted to say?

19           MR. KEATING:  I just wanted to add to Mr. Morando

20  that some of these slides do show multiple layers, but they've

21  been selected to highlight the different elements.

22           THE COURT:  Okay.  So this -- the one he's looking

23  at -- is a multiple-layer plot, right?

24           MR. KEATING:  Exactly, but it shows -- it's a

25  selected number.

```
 1          THE COURT:  Okay.  I understand that, but I want to
 2  start talking about the same language.
 3          So the silicon-layer picture is multiple layers?
 4          MS. ELSON:  (Nods)
 5          THE COURT:  Okay.
 6          MS. ELSON:  Correct.
 7          THE COURT:  And then the one behind it, where they
 8  show the high side and the low side -- are those single-layer
 9  plots, or multiple-layer plots?
10          MR. KEATING:  There are a limited number of layers to
11  give the context, so that you can see where the drain region
12  is, the source region, and the gates.  So you need to have a
13  certain context I guess so you can see the relative layout of
14  the different elements of the high-side effect or the low-side
15  effect, so that's what you're seeing in Slide 3 and then again
16  in Slide 4.
17          THE COURT:  Well, why don't -- maybe we need to take
18  it a step at a time.  Why don't you take a deposition on this?
19  Why don't you go through this, and take a deposition on these?
20  And you'll ask exactly the kinds of questions that we're
21  talking about now.
22          Yeah.  Go ahead.
23          MS. ELSON:  And, with all due respect, your Honor,
24  with these, we will not be able to point to specific
25  structures.  And all we're asking for at this point would be
```

1  the specific layers.  We asked for two or three, I believe it

2  was, and specific zoomed-in parts, because what he's pointing

3  to is multiple layers on top of each other, where they haven't

4  identified even what each layer is.  And they know.

5          **THE COURT:**  I understand that.  You can ask the

6  deposition person -- the person who's going to be a 30(b)(6) on

7  this interrogatory and on these answers.  You can say, "Which

8  layers are depicted here?  And where is the this structure?"

9  And what -- you know, and that won't help?

10         **MS. ELSON:**  I'm just saying I think it's likely that

11 even that person will have a great deal of difficulty, because

12 you can't see the boundaries of individual layers.  They're all

13 obfuscated, one on top of the other.  And the defendants --

14 excuse me -- plaintiffs know this, because when they did their

15 infringement contentions, they understand these are

16 three-dimensional structures.

17         And, for example, in our Exhibit 10 to our reply on

18 page 19, they, themselves, had to point to our own documents to

19 indicate the connection from lower layers to upper layers in a

20 cross-section versus this top view, which is the equivalent of

21 looking at an X ray, when what you really need are certain

22 layers on a CT scan.  And that's what we're asking for.

23         So, with this additional documentation that we've

24 been asking for since last fall, then we could do a very

25 focused deposition.

1          **THE COURT:**  Well, let me see.

2          Well, Exhibit -- page 19 -- I see.

3          Well, these aren't layer plots.

4          **MS. ELSON:**  Correct.  What these are, are -- these

5    are PowerPoints from Primarion, showing certain cross-sections.

6          In other words, they knew it was not enough to just

7    look down.  You've got to get the cross-section, and know

8    what's on each layer connecting upwards.

9          So imagine looking down on a building.  And what you

10   really want to know is:  Is there a staircase going from

11   Floor Two to Floor Five?  I don't have that detail.

12         **THE COURT:**  Well, in some of these you're not looking

13   for the staircase.  In some ways, in some of them, you're

14   looking for what's on Floor Four.

15         **MS. ELSON:**  No.  Well, the claim element in

16   question -- one of the claim elements -- is:  Can connecting

17   the alternating pattern of doped regions --

18         **THE COURT:**  No.  I understand that.

19         **MS. ELSON:**  Okay.  So that's going --

20         **THE COURT:**  Some of them are alternating patterns of

21   doped regions.  Would not necessarily implicate that.

22         **MS. ELSON:**  So not any doped regions are the

23   alternating ones connected up to the metalized pads, for

24   example.  For that, you need to put certain layers on certain

25   layers; not just everything on top of each other.

```
 1              And we tried to be very reasonable.  We gave them

 2     exactly that information, upon request; exactly the 42 zones

 3     they asked us to zoom in on, the specific layers they asked

 4     for, with specific fill codes, at their request.

 5              We did that last June.

 6          THE COURT:  Mm-hm.

 7          MS. ELSON:  And all we're asking for is the same

 8     information, so that we can take a focused deposition and know

 9     what we're looking at.

10          THE COURT:  No.  I understand that.  You did it for

11     how many products?

12          MR. MORANDO:  One, your Honor.  And we asked them for

13     three more.

14          THE COURT:  And they want it -- and you want it for

15     82, so it's a little bit more extensive.

16          MS. ELSON:  It's not our decision to rely on 82

17     products.  I would be happy if they relied on one.

18          MR. MORANDO:  Your Honor.

19          THE COURT:  Well, I understand that, but it doesn't

20     completely answer the question, because you can get a certain

21     amount of information out of what you've got here.  And you can

22     get a certain amount of information from asking questions at a

23     30(b)(6).

24              What you're asking me to do is, on top of that, make

25     them spend the money.  It's -- they've got a lot of money.  I'm
```

```
 1   not terribly concerned about it; but I am concerned about it to

 2   do the specific layer plots, so I'd have to put it all in

 3   balance, as to --

 4            MS. ELSON:  Understood.

 5            THE COURT:  -- as to what is actually worth being

 6   spent.  You wouldn't want to pay for that, would you?

 7            MS. ELSON:  We don't think we should have to.  It's

 8   not our burden.

 9            We shouldn't have to speculate, either, based on

10   partial information.  It's like getting half a blueprint, when

11   we've been asking for the whole blueprint.

12            THE COURT:  I'm not convinced that -- that every

13   single layer plot that you asked for is one from which will get

14   essential information.  That, I'm not convinced of.

15            I am convinced that some of them, you might.  I just

16   don't know where the edge is.  I don't know which, out of all

17   of these, you know, two or three layers for each of the 82

18   products that you've asked for, are really going to be such

19   that you will get information you can't get by asking a

20   question at a deposition of a 30(b)(6) witness.

21            MS. ELSON:  All I'm saying is it's very difficult,

22   when you're faced with a three-dimensional structure, to have a

23   witness who themselves can't tell, because you've got a whole

24   pile of layers all on top of each other, obfuscating each

25   other, to get -- for us to know what we think the structure is,
```

```
 1  and then for the witness to be able to tell us verbally what's
 2  underneath each layer -- I think that will be very challenging,
 3  even for the witness.
 4          THE COURT:  Mm-hm.
 5          MS. ELSON:  Perhaps we could compromise, your Honor.
 6          They've identified multiple families of parts that
 7  they relied on among the 82 products.  Could we at least get
 8  the specific layers, which are only a few, and specific
 9  zoomed-in areas for one representative of each family?
10          THE COURT:  How many families are there?
11          MS. ELSON:  If I recall, there were five or six.
12          MR. MORANDO:  Quite --
13          THE COURT:  So what you're saying is for each of the
14  five or six families, get a representative layer plot for how
15  many layers?
16          MS. ELSON:  If I recall, what we asked for was
17  something like two or three layers -- specific layers -- of
18  certain zoomed-in areas.
19          THE COURT:  Okay.  So we're talking about 15 layer
20  plots?
21          MS. ELSON:  That's -- that would be a reasonable
22  guess.
23          MR. MORANDO:  Your Honor, a couple -- two things.
24          As they said, they only provided this to us for one
25  of their products.
```

1              There are three accused products.  We are supposed to

2      meet and confer again this afternoon on the request to get it

3      from them.  They haven't even agreed to this, because it's very

4      expensive.

5              Secondly, however, what she's now proposing as a

6      compromise, we offered to give them in October of 2009.

7              **THE COURT:**  Mm-hm.

8              **MR. MORANDO:**  They rejected that.

9              **THE COURT:**  It's amazing how things change.

10             **MS. ELSON:**  That was only if we paid for it.  Yeah.

11             **THE COURT:**  I'm not -- you should tell from my answer

12     that I'm not terribly worried about the fact that there was

13     some disagreement, and people couldn't reach a compromise many

14     months ago when they should have.

15             **MS. ELSON:**  I'm just pointing out --

16             **THE COURT:**  Do you not think it's a good compromise

17     now?

18             **MR. MORANDO:**  I'm saying we're happy to do that.

19     We'd like, however, if we're now asking for requests for things

20     that aren't part of the motion here, that we get the same for

21     the other three products, so we don't have to meet and confer

22     with them this afternoon and bring a joint letter request on

23     that.

24             **THE COURT:**  Is that going to get worked out?

25             **MS. ELSON:**  I don't see why that wouldn't.  I would

```
 1   just point out, however, there are only really two products.

 2   The chip part does not change from the --

 3              THE COURT:  Okay.  I'm not --

 4              MS. ELSON:  Two of them have the same die.  So

 5   there's really -- they're only going to get a duplicate of what

 6   they have.

 7              THE COURT:  Okay.  That sounds like that will get

 8   worked out.

 9              MR. MORANDO:  (Nods)

10              THE COURT:  I don't know enough about that dispute.

11              All right.  So here's what we're going to do.

12              Number one, the motion to preclude is denied.

13              Number two, plaintiffs will produce, for each family

14   of products that they contend practice the inventions up to

15   three layer plots' zoom-ins, to be identified by the

16   defendants.

17              Three, the defendants can take a 30(b)(6) on the

18   interrogatory answer to Number 8, right?

19              MR. MORANDO:  8(e), your Honor.

20              THE COURT:  8(e).  Yes.  8(e), the supplement on the

21   further supplemental responses.

22              Okay?

23              MR. MORANDO:  Thank you, your Honor.

24              THE COURT:  Thank you.

25              MS. ELSON:  Thank you, your Honor.
```

1          **THE COURT:**  Oh, I'm sorry.  This is yours

2 (indicating).

3          **MS. ELSON:**  Thank you.

4          **THE COURT:**  Do you have anything?

5          **THE CLERK:**  No.

6          **THE COURT:**  Oh.  He's standing up.  That's never a

7 good thing.

8          **MR. MC MAHON:**  But I'm smiling.

9          **THE COURT:**  Better speak quickly.

10          **MR. MC MAHON:**  I am.  I will.

11          **THE COURT:**  There's one more thing, I guess.

12          **MR. MC MAHON:**  Yeah.  One more thing.  The last time

13 we were before you, we discussed the trial that we have now,

14 which was the bifurcated trial on January 31st.

15          So the question now becomes -- you know, we're going

16 to file our motion for judgment and certification Rule 54(b) --

17          **THE COURT:**  Right.

18          **MR. MC MAHON:**  -- among other things.  We have a

19 mediation on the 22nd.

20          **THE COURT:**  Yes.  I'm excited about that.

21          **MR. MC MAHON:**  Yes.  We are, too, your Honor.  We

22 can't wait.  And then it's always good to see Judge Infante.

23          **THE COURT:**  I hope he'll be kind to you.

24          **MR. MC MAHON:**  Exactly.  And discovery cutoff is on

25 the 18th.  And then we have our Rule 26 expert opening reports

1  on the 28th.

2          So here's what the issue is.  The trial on the 31st

3  is, you know, based on -- I reread the transcript yesterday of

4  the last hearing.  And the question is:  What's that trial

5  contain?  Because if it's -- if it's got anything to do with

6  damages, we can't do it then, because we haven't discovered any

7  damages.

8          **THE COURT:**  No, no.  I understand.  And the thought

9  was that I rule on the pending claim construction -- the one

10  issue.  And I'm almost done with that.  That will, hopefully,

11  happen next week.  It will certainly happen before your

12  mediation.

13          **MR. MC MAHON:**  Okay.

14          **THE COURT:**  And then you will have a position on

15  whether or not there's any infringement left in the case.

16          **MR. MC MAHON:**  Right.

17          **THE COURT:**  And that goes up or it doesn't go up.  If

18  it doesn't go up, we have a different trial.  It's -- it is --

19  it's whatever it is.  And I think counsel for plaintiff agrees

20  we have a different trial.

21          **MR. MC MAHON:**  Right.  Here's my only -- the experts'

22  reports are due on the 28th.  We have the 30,000 documents they

23  dumped on us the other night.  I think we're going to have to

24  put that over -- I'm asking; I think it makes sense -- until

25  after the mediation, until after you've ruled.

1          THE COURT:  Are you going to get any push-back on

2    that?

3          MR. MC MAHON:  Well, if there are, I'd be surprised.

4          THE COURT:  Yeah.  No.  Just talk to me.

5          MR. MORANDO:  We're supposed to talk this afternoon.

6          MR. MC MAHON:  Maybe he could tell me now.  This is

7    not exactly some monumental mental gymnastics he's going to

8    have to do.

9          THE COURT:  No, no, no.  No, no, no.  That's right.

10   You know how I do these things.  This is up to you guys to work

11   out.  I'm not going to spend time --

12         MR. MC MAHON:  I hear you.

13         THE COURT:  -- and have my discrimination case sit

14   back there while we discuss this.

15         Go work it out.

16         Of course, my inclination would be not to have you do

17   unnecessary work on the experts if it's going to settle in two

18   weeks.

19         MR. MC MAHON:  Or if we have wait for your claim

20   construction and then deal with that issue, our experts won't

21   be able to do their reports.  So we may have to call you for

22   maybe a telephone hearing if we can't work it out.  It's this

23   morning, not this afternoon.

24         THE COURT:  That's fine.  I'm here.

25         MR. MC MAHON:  Thank you, your Honor.  We have other

```
 1  things we would cover, but I think this is, you know, really
 2  fundamental on all of it.  Okay?
 3          THE COURT:  I have great confidence that you can work
 4  it out.
 5          MR. MC MAHON:  Thank you, your Honor.
 6          THE COURT:  Thank you all.
 7          THE CLERK:  You want to keep all of those boxes?
 8          MR. MORANDO:  We just sort of lodged them.
 9          THE COURT:  You can send somebody to pick them up.
10  Yeah.  We don't need those.
11          THE CLERK:  Why don't you have somebody give me a
12  call?  And maybe we can arrange for pick-up on Monday or
13  something like that.
14          MR. MORANDO:  Okay.  That's fine.
15          (At 10:05 a.m. the proceedings were adjourned)
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C. 08-5129-JCS, Volterra Semiconductor v. Primarion, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Monday, June 14, 2010