1   James W. Morando (State Bar No. 087896)
        jmorando@fbm.com
2   Jeffrey M. Fisher (State Bar No. 155284)
        jfisher@fbm.com
3   June T. Tai (State Bar No. 226997)
        jtai@fbm.com
4   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA 94104
    Telephone:  (415) 954-4400
6   Facsimile:  (415) 954-4480

7   Attorneys for Plaintiff
    VOLTERRA SEMICONDUCTOR CORPORATION

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13  VOLTERRA SEMICONDUCTOR                    Case No. CV-08-5129 JCS
    CORPORATION, a Delaware corporation,
14                                            **REDACTED PLAINTIFF VOLTERRA**
                    Plaintiff,                **SEMICONDUCTOR CORPORATION'S**
15                                            **NOTICE OF MOTION AND MOTION**
                                              **FOR PARTIAL SUMMARY JUDGMENT**
16          vs.                               **OF NO ANTICIPATION PURSUANT TO**
                                              **35 U.S.C. § 102; MEMORANDUM OF**
17  PRIMARION, INC., a Delaware               **POINTS AND AUTHORITIES IN**
    corporation, INFINEON                     **SUPPORT THEREOF**
18  TECHNOLOGIES AG, a German
    corporation, and INFINEON                         **[MSJ NO. 4]**
19  TECHNOLOGIES NORTH AMERICA
    CORPORATION, a Delaware corporation,      Date:     October 29, 2010
20                                            Time:     1:30 p.m.
                    Defendants.               Dept:     Courtroom A, 15th Floor
21                                            Before:   Honorable Joseph C. Spero

22                                            Complaint Filed:  November 12, 2008
                                              Trial Date:       January 31, 2011
23
    ───────────────────────────────
24  AND RELATED COUNTERCLAIMS.                **PARTIALLY FILED UNDER SEAL**

25  TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

26          NOTICE IS HEREBY GIVEN that on October 29, 2010 at 1:30 p.m. or as soon thereafter

27  as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

**REDACTED** VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS                              23666\2329321.7

1    Francisco, California 94102, in Courtroom A, 15th Floor, pursuant to Fed. R. Civ. P. 56, plaintiff

2    Volterra Semiconductor Corporation ("Volterra") will and hereby does move this Court for

3    summary judgment for a determination that Claims 26 and 34 of U.S. Patent No. 6,278,264 and

4    Claims 9, 11, 16, 17, 18, 19, 22, and 24 of U.S. Patent No. 6,462,522 are not anticipated under 35

5    U.S.C. § 102.

6         This Motion is based on this Notice of Motion and Motion, the accompanying

7    Memorandum of Points and Authorities, the Combined Declaration of Jeffrey M. Fisher ("Comb.

8    Fisher Decl."), all pleadings and papers filed in this action, and any other evidence or argument

9    presented by counsel to the Court.

10   Dated:  August 20, 2010                    FARELLA BRAUN & MARTEL LLP

11

12                                              By:_____/s/ June T. Tai_____
                                                      June T. Tai
13

14                                              Attorneys for Plaintiff
                                                VOLTERRA SEMICONDUCTOR
15                                              CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS                - 2 -                    23666\2329321.7

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. ISSUE PRESENTED .................................................................................................. 1

III. STATEMENT OF FACTS .......................................................................................... 2

    A. Background Technology and Prior Art To The Burstein Patents .......................... 2

    B. The Asserted Claims ............................................................................................ 3

        1. Claims 26 and 34 of the '264 Patent and Claims 22 and 24 of the '522 Patent ..................................................................................... 3

        2. Claims 9, 11, 16-19 of the '522 Patent ...................................................... 4

IV. APPLICABLE LEGAL STANDARD .......................................................................... 5

V. BECAUSE NO SINGLE REFERENCE DISCLOSES EACH AND EVERY ELEMENT OF ANY ASSERTED CLAIM, VOLTERRA'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO ANTICIPATION SHOULD BE GRANTED .................................................................................................................. 6

    A. Sicard Does Not Anticipate Claims 26 and 34 of the '264 Patent and Claims 22 and 24 of the '522 Patent ................................................................... 6

        1. Sicard does not disclose a "power switch for a voltage regulator"............ 6

        2. Sicard does not disclose "metalized pads"................................................ 7

        3. Sicard does not disclose a "second plurality of doped regions" or a first and second plurality of doped regions arranged in an "alternating pattern" .................................................................................... 9

        4. Sicard does not disclose "solder balls" as required by Claim 34 of the '364 Patent ......................................................................................... 10

        5. Sicard does not disclose a "gate region" separating the first and second pluralities of doped regions as required by Claims 22 and 24 of the '522 Patent ..................................................................................... 11

    B. The Stratakos 1994 Article Does Not Anticipate Claims 9, 11, and 16-19 of the '522 Patent ............................................................................................... 12

        1. The Stratakos 1994 article does not expressly anticipate Claims 9, 11, and 16-19 of the '522 Patent ............................................................... 12

        2. Even assuming that "Chip on board" (COB) encompasses "Flip Chip," the Stratakos 1994 article does not inherently anticipate .............. 13

        3. "Chip on board" refers to wire bonding in the context of the Stratakos 1994 article ............................................................................... 14

        4. Even assuming *arguendo* that a mention of COB included flip chip, the Stratakos 1994 Article is not enabling and therefore, cannot anticipate .................................................................................................. 17

    C. Dr. Stratakos' Thesis Does Not Anticipate Claims 9, 11, and 16-19 of the '522 Patent ............................................................................................... 18

VI. CONCLUSION .......................................................................................................... 21

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ..................................................................................... 5

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.,*
   750 F.2d 1569 (Fed. Cir. 1984) ................................................................... 13

*Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.,*
   249 F.3d 1341, 1353 (Fed. Cir. 2001) ........................................................ 10

*Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.,*
   482 F.3d 1347 (Fed. Cir. 2007) ..................................................................... 5

*Commonwealth Sci. and Indus. Research Org. v. Buffalo Tech. (USA), Inc.,*
   542 F.3d 1363 (Fed. Cir. 2008) ................................................................... 21

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,*
   868 F.2d 1251 (Fed. Cir. 1989) ..................................................................... 7

*Crown Operations Int'l v. Solutia, Inc.,*
   289 F.3d 1367 (Fed. Cir. 2002) ..................................................................... 5

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,*
   807 F.2d 955 (Fed. Cir. 1986) ....................................................................... 7

*Impax Labs., Inc. v. Aventis Pharms., Inc.,*
   545 F.3d 1312 (Fed. Cir. 2008) .............................................................. 17, 19

*Linear Tech. Corp. v. Int'l Trade Comm'n,*
   566 F.3d 1049 (Fed. Cir. 2009) .............................................................. 19, 20

*Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,*
   976 F.2d 1559 (Fed. Cir. 1992) ..................................................................... 6

*Net MoneyIN, Inc. v. VeriSign, Inc.,*
   545 F.3d 1359 (Fed. Cir. 2008) .............................................................. 19, 20

*Therasense, Inc. v. Becton, Dickinson and Co.,*
   593 F.3d 1325 (Fed. Cir. 2010) ................................................................... 19

*Transclean Corp. v. Bridgewood Servs., Inc.,*
   290 F.3d 1364 (Fed. Cir. 2002) .......................................................... 7, 13, 14

*Vizio, Inc. v. Int'l Trade Comm'n,*
   605 F.3d 1330 (Fed. Cir. 2010) ................................................................... 12

### FEDERAL STATUTES

35 U.S.C.
   § 102 ...................................................................................... 1, 5, 19

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

Fed. R. Civ. P.
  § 56(c) ................................................................................................................................ 5

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3        Plaintiff Volterra Semiconductor Corporation ("Volterra") has achieved significant

4  success developing and selling an innovative new solution for improved switching voltage

5  regulators.  Volterra's flip chip integrated power products combine high power switches and other

6  circuitry on a single integrated circuit ("IC") chip for switching voltage regulators using flip chip

7  packaging.  Volterra's technology is covered by various patents, including U.S. Patent Nos.

8  6,278,264 (the "'264 Patent") and 6,462,522 (the "'522 Patent") (together, the "Burstein

9  Patents").

10        Defendants Primarion, Inc. ("Primarion"), Infineon Technologies AG ("Infineon AG"),

11  and Infineon Technologies North America Corporation ("Infineon NA") (collectively

12  "Defendants") do not dispute that they have made, used, offered for sale, and sold the PX4640,

13  PX4642, PX4650, and PX4652, which infringe certain claims of the Burstein Patents.  In

14  response, Defendants have asserted that Claims 26 and 34 of the '264 Patent and Claims 22 and

15  24 of the '522 Patent are anticipated by U.S. Patent No. 5,945,730 to Sicard ("Sicard").

16  Defendants also allege Claims 9, 11, and 16-19 of the '522 Patent are anticipated by two

17  additional references: an article authored by Dr. Stratakos, and Professors Seth Sanders and

18  Robert Brodersen of UC Berkeley, entitled "A Low Voltage CMOS DC-DC Converter for a

19  Portable Battery-Operated System" (IEEE 1994) ("Stratakos 1994 Article"); and Dr. Stratakos'

20  Ph.D Dissertation, "High-efficiency Low-Voltage DC-DC Conversion for Portable Applications"

21  (the "Stratakos Thesis").  None of these references disclose all the elements of the asserted

22  claims.

23        Because a reference must disclose each and every element of the asserted claims in order

24  to anticipate, and because Defendants cannot prove the presence of all elements of any of the

25  asserted claims in any single alleged prior art reference at trial, Volterra's Motion for Summary

26  Judgment of No Anticipation Pursuant to 35 U.S.C. § 102 should be granted.

27

### II.    ISSUE PRESENTED

28        Whether summary judgment of no anticipation under 35 U.S.C. § 102 of the Asserted

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                    - 1 -                    23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS

1  Claims of the Burstein Patents should be granted where Defendants have not and cannot show

2  that all elements of any Asserted Claim can be found in a single prior art reference.

3  **III.   STATEMENT OF FACTS**

4      **A.   Background Technology and Prior Art To The Burstein Patents**

5        Volterra's patented technology relates to voltage regulators which provide a regulated

6  substantially constant output voltage used to power elements of computer systems such as

7  microprocessors, graphics processors, digital signal processors, and memory.  As described by the

8  Burstein Patents, and as known in the prior art, a switching voltage regulator—or simply

9  "switching regulator"—converts an input voltage into a high frequency voltage and filters this

10  voltage to generate a regulated substantially constant output voltage.  '264 Patent at 1:15-18

11  (Comb. Fisher Decl., Ex. 1).[1]  The switching regulator can do this through the use of two switches

12  that open and close, allowing current to flow from an input voltage source (such as a battery)

13  through an output filter to a load (such as a microprocessor or memory device).  *See* Szepesi

14  Open. Infr. Rep. at 29 (Comb. Fisher Decl., Ex. 49).  These switches are typically implemented

15  by transistors, such as MOSFETs.  *See id.*; *see also id.*, Fig. V-6 (showing simplified illustration

16  of MOSFET depicted in Szepesi 7/10/09 MSJ Infr. Rep., Fig. V-6 (Dkt. No. 115) (Comb. Fisher

17  Decl., Ex. 94).  The design and layout of a MOSFET switch can minimize certain parasitic losses

18  associated with the operation of the power switch, and as a result improve efficiencies of the

19  power switch.  *Id.*, ¶¶ 32-36.

20        In the prior art, integrated circuits including power switches for voltage regulators were

21  packaged using wire bonding technology.[2]  This meant that wires connected the conductive metal

22  lead frame of the IC package to pad areas on the chip that in turn connected to the source, drain,

23  and gate of the MOSFET switching transistors.  *Id.*, ¶ 38.  The package was then mounted to the

24  printed circuit board ("PCB").  Wire bonding, however, affects the performance of the switching

25  ―――――――――――――――――――――――――
[1] Because the '522 Patent is a continuation of the '264 Patent, the specifications of the patents are identical; all citations to the '264 Patent specification apply equally to the '522 Patent.

26  █████████████████████████████████████████

27  █████████████████████████████████████████

28  ████████████████████████████████████

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                     - 2 -                                      23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS

1   regulator by introducing unwanted parasitic resistance and inductance to the switches, often

2   referred to as parasitics. *Id.*, ¶ 39. These parasitic effects can cause interference in the operation

3   of the switching regulator circuit, reduce efficiency, raise operating temperature, and in some

4   cases, cause damage to the switching regulator. *Id.*, ¶¶ 39, 41-42.

5         The Burstein Patents provide a flip chip type integrated circuit with a power switch and

6   other elements of a voltage regulator that offers many advantages over prior art switching

7   regulators. *See generally* '264 and '522 Patents. In a flip chip type integrated circuit, according

8   to the Burstein Patents, metalized pads are positioned across the active area of a die. Szepesi

9   Open. Infr. Rep., ¶ 43 (Comb. Fisher Decl., Ex. 49). Solder balls are attached to the metalized

10  pads, facilitating connection between the die and external components. *See id.* When the chip is

11  flipped and attached to a PCB, the active side of the die is facing the PCB, with the solder balls

12  positioned under the active area of the die. *Id.*

13        Although flip chip packaging was known in the prior art, Defendants have been unable to

14  point to a single witness, patent or paper that has even suggested using flip chip packaging

15  technology for an integrated circuit including a power switch for a voltage regulator prior to the

16  inventions by Volterra's Burstein and Nickel.

17      **B.**    **The Asserted Claims**

18        The Asserted Claims of the Burstein patents can be separated into two groups. As

19  discussed below, the '264 Patent, Claim 26 and '522 Patent, Claim 22 and their dependents cover

20  an integrated circuit including a power switch for a voltage regulator with an alternating pattern

21  of doped regions connected to an array of metalized pads while the '522 Patent, Claim 9 and its

22  dependants describe a flip chip type integrated circuit chip including a power switch for a voltage

23  regulator which is connected to a controller and a filter to provide a substantially constant DC

24  output voltage.

25            1.    Claims 26 and  34 of the '264 Patent and Claims 22 and 24 of the '522

26                 Patent

27        As described in Claim 26 of the '264 Patent, the integrated circuit including a power

28  switch for a voltage regulator contains a substrate that has a first and second plurality of doped

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

1   regions arranged in a first alternating pattern. *See* '264 Patent, Fig. 3B (Comb. Fisher Decl., Ex.

2   1). The integrated circuit also contains an array of first and second pluralities of metalized pads

3   (the source and drain contacts of the MOSFET) arranged in a second alternating pattern on a

4   surface of the substrate. *See id.*, Fig. 3A; *see also id.* at 6:29-37. The first and second pluralities

5   of metalized pads are electrically connected to the first and second pluralities of doped regions

6   respectively and the first and second terminals of a voltage regulator respectively. *Id.* at 2:59-64.

7   Claim 34 of the '264 Patent further provides that these metalized pads are each in turn connected

8   to a first and second set plurality of solder balls interleaved across the surface on the chip. *Id.*,

9   Fig. 7; *see also id.* at 8:3-5. Thus, the solder balls connect to the metalized pads and provide an

10  electrical current path that flows vertically from the active side of the chip down toward the

11  underlying PCB.

12      The '522 Patent, Claim 22 is similar to Claim 26 of the '264 Patent, but further specifies

13  that a gate region on the substrate separates the first and second plurality of doped regions. '522

14  Patent at 10:50-52 (Comb. Fisher Decl., Ex. 2).

15      2.      Claims 9, 11, 16-19 of the '522 Patent

16      Claim 9 of the '522 Patent recites a voltage regulator having a first flip-chip type IC chip

17  mounted on a printed circuit board. The IC contains a first power switch that alternately couples

18  and decouples the input terminal to the output terminal of the voltage regulator. '522 Patent at

19  9:53-57 (Comb. Fisher Decl., Ex. 2). As in the '264 Patent, the power switch on the IC includes a

20  first and second plurality of doped regions arranged in an alternating pattern and coupled to the

21  input and output terminals of the voltage regulator respectively. *Id. at* 9:58-64. The first and

22  second plurality of doped regions are separated by gate regions. *Id. at* 9:65-67; Fig. 3B. The

23  voltage regulator further includes a filter that provides a substantially DC voltage at the output

24  terminal and a control circuit to open and close the first power switch to maintain a substantially

25  constant DC output voltage. *See id. at* 10:1-2; Fig. 1.

26      Dependent claims 11, 16, 17, 18, and 19 depend from Claim 9 and add additional

27  elements, including requiring a second power switch on the flip chip type IC chip as described by

28  Claim 18. Dependent Claim 11 provides that the gate region of the power switch in Claim 9 is a

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                                    - 4 -                                    23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS

1  unitary gate structure separating the first and second plurality of doped regions. *Id.*, Claim 11.

2  * * * * *

3      Defendants have alleged the Asserted Claims of the Burstein Patents are invalid as

4  anticipated. Defendants, however, cannot demonstrate that each and every element of an

5  Asserted Claim is present in a single prior art reference—a condition necessary to establishing

6  anticipation of a patent claim. Indeed, although Defendants have identified numerous prior art

7  references, Defendants cannot identify any single prior art reference providing for a flip chip type

8  integrated circuit including a power switch for a voltage regulator. As a result, and as discussed

9  in more detail below, Defendants cannot meet their burden of proving anticipation of the Burstein

10  Patents by clear and convincing evidence. Summary judgment of no anticipation under 35 U.S.C.

11  § 102 should be granted.

12  **IV.    APPLICABLE LEGAL STANDARD**

13      Summary judgment should be granted where "the pleadings, the discovery and disclosure

14  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

15  that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere

16  existence of some evidence supporting the nonmoving party will not defeat a motion for summary

17  judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, there must be

18  "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

19  *Id.*

20      In a patent infringement case, the accused infringer bears the burden of proving invalidity

21  of an asserted patent by clear and convincing evidence. *Central Admixture Pharmacy Servs., Inc.*

22  *v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1357-58 (Fed. Cir. 2007). Therefore, to

23  obtain summary judgment of no anticipation, the patentholder must show that the accused

24  infringer, who bears the burden of proof at trial, failed to produce clear and convincing evidence

25  on an essential element of the defense. *See Crown Operations Int'l v. Solutia, Inc.*, 289 F.3d

26  1367, 1377-78 (Fed. Cir. 2002). "A patent is invalid for anticipation when the same device or

27  method, having all of the elements contained in the claim limitations, is described in a single prior

28  art reference." *Id.* at 1375. "Absence [from a prior art reference] of any claimed element negates

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                    - 5 -                              23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS

1   anticipation." *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d

2   1559, 1572 (Fed. Cir. 1992).

3   **V.    BECAUSE NO SINGLE REFERENCE DISCLOSES EACH AND EVERY**
       **ELEMENT OF ANY ASSERTED CLAIM, VOLTERRA'S MOTION FOR**
4       **PARTIAL SUMMARY JUDGMENT OF NO ANTICIPATION SHOULD BE**
       **GRANTED**

5
       **A.    Sicard Does Not Anticipate Claims 26 and 34 of the '264 Patent and Claims**
6           **22 and 24 of the '522 Patent**

7           1.    Sicard does not disclose a "power switch for a voltage regulator"

8           The device described by Sicard is not a "power switch for a voltage regulator." In fact,

9   Sicard does not disclose a voltage regulator as a possible application or even mention the word

10  "switch." *See generally* Sicard (Comb. Fisher Decl., Ex. 95). Sicard's LDMOS transistor would

11  not have even been suitable for use in a voltage regulator application. As Dr. Szepesi has noted,

12  switching voltage regulators are desirable because they have a high switching frequency as well

13  as high efficiency. Szepesi Validity Rep., ¶ 59 (Comb. Fisher Decl., Ex. 22). This high

14  efficiency is provided by both minimizing the on-resistance and the gate capacitance of the

15  MOSFET transistor used in the power switch. *Id.*, ¶¶ 67-68. The transistor described by Sicard,

16  however, would have a large gate drain capacitance, suggesting it would not have the high

17  efficiency at high switching frequency needed for use in a voltage regulator. *Id.*, ¶ 69.

18  Furthermore, Sicard does not address operating frequency or lead or parasitic inductances

19  important to power switches used in switching voltage regulators at the time of the Burstein

20  Patents. *Id.*, ¶ 70. In fact, Sicard specifically states that the disclosed LDMOS transistor is

21  particularly useful in "continuous" operation at high current levels, which suggests it was not

22  intended for use in a high switching frequency application such as a switching voltage regulator,

23  but rather as static switch, *e.g.*, a load switch. *See id.*, ¶¶ 73, 75; *see also* Sicard at 4:50-57

24  (Comb. Fisher Decl., Ex. 95); █████████████████████████████████

25  Sicard further states that the disclosed device is "particularly useful in applications requiring the

26  integration of logic and power devices on the same chip." Sicard at 4:54-56 (Comb. Fisher Decl.,

27  Ex. 95). Such use of logic reinforces that Sicard's LDMOS transistor is intended for use as a load

28  switch and not a "power switch for a voltage regulator." Szepesi Validity Rep., ¶ 73 (Comb.

Parella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                    - 6 -                    23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS

1    Fisher Decl., Ex. 22).

2

3

4                                                                    Merely the possibility that

5    Sicard's transistor may have been able to work in a switching voltage regulator is insufficient.

6    *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002).  To

7    anticipate, Sicard must explicitly disclose a power switch for a voltage regulator as required by

8    the Burstein Patent claims. *See Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d

9    1251, 1256-57 (Fed. Cir. 1989) (rejecting anticipation of claim for an "optical waveguide"

10   because nothing in the prior art discusses the use of the prior art fiber as an optical waveguide).

11   As in *Corning*, Sicard never even mentions voltage regulators. *See generally* Sicard (Comb.

12   Fisher Decl., Ex. 95).  Accordingly, Sicard does not disclose a "power switch for a voltage

13   regulator." Szepesi Validity Rep., ¶ 71 (Comb. Fisher Decl., Ex. 22).

14          Indeed, in response to the reexamination petition filed by Defendants, the U.S. Patent and

15   Trademark Office has rejected the position that Sicard anticipates Claim 26 in an initial office

16   action. *See* PTO's 11/30/09 Office Action on the '264 Patent at PRIMC00002253 (Comb. Fisher

17   Decl., Ex. 96) ("Sicard does not teach every element of the claim 26 including the use of power

18   switch for a voltage regulator with the first and second plurality of pads are connected to a first

19   and second terminals in the voltage regulator respectively.").  Evidence of an examiner's decision

20   in rejecting prior art in reexamination where the same art is before the district court is relevant to

21   validity of the asserted claims. *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d

22   955, 961 (Fed. Cir. 1986) (citation omitted; noting that the reissue is evidence of validity and on

23   reissue, the burden of proving invalidity is "made heavier").

24          2.      Sicard does not disclose "metalized pads"

25          Sicard also does not disclose "metalized pads" as required by '264 Patent, Claim 26, and

26   '522 Patent, Claim 22.  As construed by the Court, metalized pads are:

27              Pads that include an under-bump metallization layer (UBM) that
                forms an interface between the top metal layer of the integrated
28              circuit and the solder balls (bumps) that are often used in flip-chip

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                    - 7 -                          23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS

> type integrated circuits. Pads in an integrated circuit are openings in the top passivation layer that allow connection to the top metal layer, to enable formation of connections between the integrated circuit and the external circuit element.

*See* Claim Constr. Order at 70 (Dkt. No. 697).

Sicard does not disclose the UBM necessary to form metalized pads. Sicard's bumps are described as directly in "contact" with the final metal layer of the IC (i.e., top side of "metal conductor (34)." Sicard at 1:64-67 (Comb. Fisher Decl., Ex. 95) (noting bumps are formed "in contact with the metal conductor"); Bravman Rep., ¶ 116 (Comb. Fisher Decl., Ex. 26); Szepesi Validity Rep., ¶¶ 83-99 (Comb. Fisher Decl., Ex. 22). In fact, Sicard praises manufacturing simplicity by describing the desirability of eliminating additional steps of manufacture that would be necessary to add a UBM. *See* Sicard at 4:65-5:3 (Comb. Fisher Decl., Ex. 95) (stating that "the present invention does not require an expensive third thick metal deposition process"). As Dr. Szepesi has opined: "Adding a UBM layer despite the implied teaching of Sicard would add at least one extra processing step (typically two or more) and directly contradict Sicard's stated goal of manufacturing (process) simplicity." Szepesi Validity Rep., ¶ 98 (Comb. Fisher Decl., Ex. 22). Thus, Sicard does not disclose UBM.



**Figure 1.** Annotated Fig. 6 of Sicard

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS

- 8 -

23666\2329321.7

1   [REDACTED] This contention directly contradicts Sicard itself, which describes

2   element 8 as a "bump." *See* Sicard at 4:7-10 (Comb. Fisher Decl., Ex. 95); *see also* Fig. 1, *supra*.

3   

4   

5   

6   

7   

8   [REDACTED] is

9   described in Sicard as a solder that "may be applied on top of the bump 8 as shown in FIG. 6 or to

10  the frame itself." *See* Sicard at 4:29-31 (Comb. Fisher Decl., Ex. 95). This thin coating of solder,

11  which can be applied to the lead frame or the bump, is not a solder ball and is not referred to as

12  such anywhere in Sicard. *See generally id.*;

13  

14          3.      Sicard does not disclose a "second plurality of doped regions" or a first and
                    second plurality of doped regions arranged in an "alternating pattern"

15  

16          Sicard does not have a first and second plurality of "doped regions" arranged in an

17  "alternating pattern" as required by Claims 26 and 34 of the '264 Patent and Claims 22 and 24 of

18  the '522 Patent. As shown in Figure 6 of Sicard, there is a single large n-region. Szepesi Validity

19  Rep., ¶¶ 79-81 (Comb. Fisher Decl., Ex. 22). There is no plurality of doped regions, which

20  requires the presence of more than one region. *Id.* Defendants themselves agree with this

21  understanding of the word "plurality." *See* Jt. Claim Constr. Stmt., Ex. B at 2 (Dkt. No. 328-2)

22  (attaching Defendants' Construction of Additional Disputed Terms and construing "plurality" to

23  mean "two or more").

24  

25  

26  

27  

28  

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As a result, his opinion on this point is unreliable and

2 should be disregarded altogether. *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*,

3 249 F.3d 1341, 1353 (Fed. Cir. 2001).

4      Because there is no second plurality of doped regions, there is no alternating pattern

5 formed by the first and second plurality of doped regions as required by Claims 26 and 34 of the

6 '264 Patent and Claims 22 and 24 of the '522 Patent and interpreted by the Claim Construction

7 Order.

8      4.    Sicard does not disclose "solder balls" as required by Claim 34 of the '364

9      Patent

10      Sicard also does not disclose the presence of a first plurality and a second plurality of

11 interleaved solder balls as required by Claim 34 of the '264 Patent.

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

23666\2329321.7

**Figure 3**. Element 52 of Sicard.

Neither expert has ever explained how the bump 8 of Sicard can be both the core of a solder ball and the underbump metallization.

   5.   Sicard does not disclose a "gate region" separating the first and second pluralities of doped regions as required by Claims 22 and 24 of the '522 Patent

As stated by Dr. Szepesi, the gate reaches from one source region to another source region and does not separate Szepesi Validity Rep., ¶¶ 101-02 (Comb. Fisher Decl., Ex. 22). As a result, the gate does not separate the first and second pluralities of doped regions.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS

- 11 -

23666\2329321.7

[Large redacted/blacked-out area covering lines 1 through 16]

Because Defendants cannot prove by clear and convincing

evidence that Sicard shows a gate separating a first and second plurality of doped regions, Sicard

cannot anticipate Claims 22 and 24 of the '522 Patent.

Sicard cannot anticipate as a matter of law because it fails to "show all of the limitations

of the claims arranged or combined in the same way as recited in the claims." *Vizio, Inc. v. Int'l*

*Trade Comm'n*, 605 F.3d 1330, 1342 (Fed. Cir. 2010). Based on the foregoing, Sicard does not

anticipate the Claims 26 and 34 of the '264 Patent or Claims 22 and 24 of the '522 Patent.

**B.     The Stratakos 1994 Article Does Not Anticipate Claims 9, 11, and 16-19 of the '522 Patent**

1.     The Stratakos 1994 article does not expressly anticipate Claims 9, 11, and 16-19 of the '522 Patent

The Stratakos 1994 Article does not disclose a flip-chip type integrated circuit chip as

required by Claim 9 of the '522 Patent and dependent Claims 11, 16, 17, 18, and 19. Indeed, the

word "flip chip" is not present anywhere in that article. *See generally* Stratakos 1994 Article

Parella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS          - 12 -          23666\2329321.7

1   (PRIM00001722) (Comb. Fisher Decl., Ex. 97). "[T]he exclusion of a claimed element from a

2   prior art reference is enough to negate anticipation by that reference." *Atlas Powder Co. v. E.I. du*

3   *Pont De Nemours & Co.*, 750 F.2d 1569, 1574 (Fed. Cir. 1984) (affirming district court finding of

4   no anticipation where the asserted prior art reference did not mention elements of the asserted

5   patent claims). On that basis alone, the Stratakos 1994 Article cannot anticipate Claims 9, 11,

6   and 16-19 of the '522 Patent.

       2.      Even assuming that "Chip on board" (COB) encompasses "Flip Chip," the
7                       Stratakos 1994 article does not inherently anticipate.
8

9        Contrary to the established knowledge of one of skill in the art,

10

11

12        Stratakos 1994 Article at PRIM00001728 (Comb. Fisher Decl., Ex. 97). To the extent

13   Defendants assert that the Stratakos 1994 Article inherently anticipates, their claim still fails as a

14   matter of law. Even if John H. Lau, ed., *Chip on Board Technologies for Multichip Modules*

15   (Van Nostrand Reinhold 1994) ("Lau *Chip on Board*") in certain places categorizes "flip chip on

16   board" or "flip chip" technology as a type of COB technology,[3] a person of ordinary skill in the

17   art would not understand that "COB" as used in the Stratakos 1994 Article would encompass flip

18   chip technology. In *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1372-73 (Fed.

19   Cir. 2002), the alleged prior art references did not expressly disclose a limitation of the asserted

20   patents requiring equalizing fluid flow. Although the defendant asserted that both prior art

21   references inherently anticipated because they *could* have been operated to equalize flow rates, it

22   was also possible that the prior art did not do this. *Id.* Stating that "anticipation by inherent

23   disclosure is appropriate only when the reference discloses prior art that must necessarily include

24

25

---

26   [3] Other books by John Lau, including *Electronic Packaging: Design Materials, Process and Reliability* (McGraw Hill 1998) and *Chip Scale Package: Design, Materials, Process, Reliability, and Applications* (McGraw Hill 1999) contradict Lau *Chip on Board* and differentiate chip on board from flip chip. (Comb. Fisher Decl., Exs. 106 & 107); *see also* Bravman Rep., ¶¶ 148-150 (Comb. Fisher Decl., Ex. 26); Szepesi Validity Rep., ¶ 11 (Comb. Fisher Decl., Ex. 22) (Lau *Flip Chip Technologies*).

Parella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS

- 13 -

23666\2329321.7

1   the unstated limitation," the Federal Circuit affirmed a grant of summary judgment of no

2   anticipation. *Id.* at 1373.

3

4

5

6

7

8

9

10           The mere possibility that a reference to COB *might* include flip chip

11   technology cannot mean the reference inherently anticipates; COB does not necessarily mean flip

12   chip and Defendants have never asserted that it does. *See Transclean Corp.*, 290 F.3d at 1373.

13

14

15

16           As a result, the Stratakos 1994 Article

17   cannot inherently anticipate Claims 9, 11, 16-19 of the '522 Patent.  Defendants' claim fails as a

18   matter of law.

19           3.    "Chip on board" refers to wire bonding in the context of the Stratakos 1994

20              article.

21          Notwithstanding Defendants' experts efforts in conjuring up a handful of references that

22   purport to show "COB" can include flip chip packaging, the evidence establishes that one of skill

23   in the art would understand the term "chip on board" in the context of the Stratakos 1994 Article

24   refers to wire bonding technology, not flip chip.

25           a.    All three authors of the Stratakos 1994 article agree that chip on

26              board means wire bonding.

27          All three authors of the Stratakos 1994 Article agree that the reference to COB meant wire

28   bonding.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS
- 14 -
23666\2329321.7

[REDACTED]

Similarly, Professor Brodersen, co-author of the Stratakos '94 Paper, also has also stated that he understood COB referred to a wire bonded technology. Indeed, Dr. Brodersen was not aware of anyone considering the use of flip chip technology for integrated circuits including a power switch for voltage regulators before the development of the invention covered by the Burstein Patents. Brodersen Decl., ¶¶ 6, 7 (Comb. Fisher Decl., Ex. 66). Professor Sanders of UC Berkeley, another co-author of the paper, has also stated that he understood the reference to COB in Dr. Stratakos' article to mean wire bonded technology. *See* Declaration of Seth Sanders, filed concurrently ("Sanders Decl."), ¶¶ 7-9. Thus, all three authors of the Stratakos 1994 Article agree that COB meant wire bonding and that they never considered using flip chip in a power switch for a voltage regulator.

            b.      Voluminous prior art references confirm that chip on board meant wire bonding.

Voluminous prior art references confirm that the term COB refers to wire bonding, distinctly different from flip chip. Lau *Chip on Board* itself explains that in the context of chip level interconnects (including wire bonding, TAB and flip-chip) only 3% of chips were solder bumped (i.e. used flip chip technology), while an overwhelming majority (90%) of chips were wire bonded. Lau *Chip on Board* at 25-27; 29 (Comb. Fisher Decl., Ex. 99). Another book edited by Dr. Lau, *Flip Chip Technologies* (McGraw-Hill 1995) ("Lau *Flip Chip* Book"), sets forth a table differentiating between chip on board and flip chip packaging. Lau *Flip Chip* Book at VLTS00057156 (Comb. Fisher Decl., Ex. 101). Similarly, Sherry L. Clough, *Flip Chip Attachment Methods*, MIT 1998, has a figure and refers to COB as a die wire bonded to a substrate. *See* MIT Thesis at 29; Fig. 4 (Comb. Fisher Decl., Ex. 102).

[REDACTED]

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS

- 15 -

23666\2329321.7

1          c.      Defendants' own references agree that chip on board meant wire
                   bonding.

2

3      Defendants' own references confirm that in context of the Stratakos 1994 article COB

4  meant wire bonding technology.  For example, █████████████████████████████

5  ███████████████████████████ in invalidity claims charts in his report.  Rostoker, however,

6  specifically states that chip on board technology refers to wire bonding:

7                  In the prior art, a number of high density chip assemblies and
                   packages have been proposed and implemented. One such
8                  technique is commonly known as "chip-on-board" technology,
                   whereby integrated circuit dies are bonded directly to die mounting
9                  areas on a circuit board substrate (e.g., ceramic, fiberglass, etc.) and
                   are *wire bonded* (with thin "bond wires") to traces on the circuit
10                 board in areas adjacent to the edges of the dies.

11 Rostoker at 2:4-12 (Comb. Fisher Decl., Ex. 108) (emphasis added█████████████

12 ███████████████████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████ "this technique permits even closer

15 spacing of integrated circuit dies than the aforementioned chip-on-board technique.").

16 ███████████████████████████████████████████████████████████████████

17 ███████████████████████████████████████████████████████████████████

18 ███████████████████████████████████████████████████████████████████

19 ███████████████████████████████████████████████████████████████████

20 ███████████████████████████████████████████████████████████████████

21 ███████████████████████████████████████████████████████████████████

22 ███████████████████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████████████████

24 ███████████████████████████████████████████████

25                 CHIP-ON-BOARD (COB).  One of many configurations in which a
                   chip is directly bonded to a circuit board or substrate.  These
26                 approaches include wire bonding, TAB, or solder interconnections,
                   similar to the C4 structure. *In low end and consumer systems*
27                 *chip-on-board generally refers to wire bonding of chip directly to*
                   *the board.*  See also Direct Chip Attach (DCA).

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

1    *Id.* (emphasis added); *see also* Tummala 1997 at PRIM02618535 (Comb. Fisher Decl., Ex. 104)

2    (noting that "**chip on board applications** typically encapsulate the chip in a protective silicone or

3    epoxy to prevent moisture and gases from degrading the **bonding wires** and joints" (emphasis

4    added)).

5            The Stratakos 1994 Article contemplates low end and consumer systems as recited by

6    Tummala 1989. A voltage regulator is a low end device. *See* Szepesi Validity Rep., ¶ 133

7    (Comb. Fisher Decl., Ex. 22). The Stratakos 1994 Article specifically contemplates a voltage

8    regulator for consumer systems. *See* Stratakos 1994 Article at PRIM00001722 (Comb. Fisher

9    Decl., Ex. 97) (stating that "[c]urrent trends in consumer electronics demand progressively lower-

10   voltage supplies"). Therefore, in the context of the Stratakos 1994 Article, chip on board refers to

11   wire bonding. *See* Szepesi Validity Rep., ¶ 133 (Comb. Fisher Decl., Ex. 22); Bravman Rep.,

12   ¶ 140 (Comb. Fisher Decl., Ex. 26 ████████████████████

13   ███████████████████████████████████████

14   ████████████████████████████

15                   4.      Even assuming *arguendo* that a mention of COB included flip chip, the
                             Stratakos 1994 Article is not enabling and therefore, cannot anticipate.

16

17           Even if one assumed that a single reference to COB would include flip chip technology,

18   the Stratakos 1994 Article could not anticipate Claims 9, 11, 16-19 of the '522 Patent because it is

19   not enabling. "In order to anticipate a claimed invention, a prior art reference must enable one of

20   ordinary skill in the art to make the invention with out undue experimentation. . . .In other words,

21   the prior art must enable the claimed invention." *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545

22   F.3d 1312, 1314-15 (Fed. Cir. 2008). In *Impax*, the Federal Circuit affirmed a district court's

23   rejection of the defendants' anticipation defense based on the "mere mention" of one of the claim

24   elements of the asserted patent claim because this was insufficient to enable a person of skill in

25   the art to practice the patent. *Id.* at 1315-16.

26           In this case, the Stratakos 1994 Article never even mentions flip chip. Even if the single

27   reference to "COB" could be understood to refer to technology including flip chip, the Stratakos

28   1994 Article lacks any explanation of how one of skill in the art would implement a flip chip type

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                    - 17 -                    23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS

1   integrated circuit including a power switch for a voltage regulator, together with the other

2   elements of Claims 9, 11, 16-19 of the Burstein Patents. *See* Szepesi Validity Rep., ¶ 143 (Comb.

3   Fisher Decl., Ex. 22). Simply knowing about the existence of an integrated circuit with a power

4   switch for a voltage regulator and the existence of flip chip packaging is insufficient. *Id.*, ¶¶ 120-

5   124.

14                                        As a result, the Stratakos 1994 Article cannot anticipate Claims 9,

15   11, 16-19 of the '522 Patent.

16   **C.    Dr. Stratakos' Thesis Does Not Anticipate Claims 9, 11, 16-19 of the '522**
         **Patent**

17

18         Dr. Stratakos' Thesis does not anticipate Claims 9, 11, 16-19 of the '522 Patent. As a

19   preliminary matter, Dr. Stratakos' Thesis is not prior art. *See* Volterra's Mot. for Summ. Judgmt.

20   of No Invalidity Based on Non-Prior Art, filed concurrently.

21         Even if Dr. Stratakos' Thesis were prior art, it does not disclose each and every element of

22   Claims 9, 11, 16-19 of the '522 Patent. Like the Stratakos 1994 Article,

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                        - 18 -                        23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS

[REDACTED]

As with the Stratakos 1994 Article, this single sentence could not have enabled one of skill in the art to implement a flip-chip type integrated circuit chip with a power switch for a voltage regulator.  *See* Section V.B.4 *supra*; *see also* Szepesi Validity Rep., ¶ 124 (Comb. Fisher Decl., Ex. 22)

[REDACTED]  *Impax Labs.*, 545 F.3d at 1315-16.

[REDACTED]

This is insufficient to meet the standard of anticipation.  "For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference."  *Therasense, Inc. v. Becton, Dickinson and Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010).  "[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102."  *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008); *see also Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1066-

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO
ANTICIPATION / Case No. CV-08-5129 JCS
- 19 -
23666\2329321.7

1   67 (Fed. Cir. 2009) (affirming finding of no anticipation where defendant relied on appendices to

2   prior art reference in combination with the reference itself to disclose synchronous switching

3   voltage regulator with two switching transistors as required by the asserted claims).

4       As in *Linear Techs*.,

15                                                          Missing from these myriad citations is any

16   reference to implementing any of these prototypes by a flip chip type integrated circuit and

17   "arranged or combined in the same way as recited in the claim." *See Net MoneyIN, Inc.*, 545 F.3d

18   at 1371.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

1
2
3
4
5
6                                                        "To incorporate material

by reference, the host document must identify with detailed particularity what specific material it

incorporates and clearly indicate where that material is found in the various documents."

*Commonwealth Sci. and Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1372

(Fed. Cir. 2008) (rejecting defendants' assertion that an article incorporated another document by

reference based on a footnote citation, without comment, to another article).  Defendants cannot

establish as a matter of law that the citation to the Stratakos 1994 Article in a list of references is

sufficient to incorporate that article by reference into Dr. Stratakos' Thesis.  Their experts do not

even attempt to try to do so.  The Stratakos 1994 Article is just one reference in a list of over 75

references.  *See* Stratakos Thesis at PRIM00002011-19.

Because Dr. Stratakos' Thesis does not disclose each and every element of the asserted

claims, Dr. Stratakos' Thesis cannot anticipate Claims 9, 11, 16-19 of the Burstein Patents.

## VI.   **CONCLUSION**

Because Defendants cannot show that each and every element of the Asserted Claims of

the Burstein Patents is present in a single prior art reference, Defendants cannot establish

anticipation by clear and convincing evidence.  As a result, Volterra respectfully requests the

Court grant its Motion for Partial Summary Judgment of No Anticipation of the Asserted Claims

of the Burstein Patents.

Dated: August 20, 2010                     FARELLA BRAUN & MARTEL LLP

                                           By:_____/s/ June T. Tai_____
                                                  June T. Tai

                                           Attorneys for Plaintiff
                                           VOLTERRA SEMICONDUCTOR
                                           CORPORATION

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

VOLTERRA'S MTN FOR SJ RE NO                - 21 -                          23666\2329321.7
ANTICIPATION / Case No. CV-08-5129 JCS