UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VOLTERRA SEMICONDUCTOR CORP.,   No. C-08-05129

    Plaintiff,

    v.

PRIMARION, INC., ET AL.,

    Defendants.
_____/

**COURT'S PRELIMINARY JURY INSTRUCTIONS**

DATED: May 6, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

## JURY INSTRUCTION NO. 1
## WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to two United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right for between 17 and 20 years to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the United States Patent and Trademark Office. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the United States Patent and Trademark Office, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a United States Patent and Trademark Office patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or

described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner initially rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent and the application issues as a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues. The fact that the United States Patent and Trademark Office grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

## JURY INSTRUCTION NO. 2
## REEXAMINATION

Once a patent has been issued, it may undergo a process in the United States Patent and Trademark Office called Re-examination. Anyone may request reexamination by the United States Patent and Trademark Office of any claim in a patent at any time during the period of enforceability of the patent. In a reexamination, the United States Patent and Trademark Office considers prior art submitted to it in connection with the reexamination and reevaluates whether the patent claims being reexamined are valid. The party that requests that the United States Patent and Trademark Office conduct a reexamination must identify and provide a copy of prior art to the PTO that it contends raises a question of patentability, and explain why the prior art may invalidate the patent. A request for a reexamination may be based on prior art that the United States Patent and Trademark Office did or did not consider during the initial examination of the application that led to the issuance of the patent.

If a reexamination is conducted, a panel of three Examiners reexamines the issued patent. Once the United States Patent and Trademark Office completes the reexamination, the PTO will issue a reexamination certificate. The reexamination certificate will set forth the results of the proceeding and the content of the patent following the reexamination proceeding. The certificate will cancel any patent claims determined to be unpatentable and confirm any patent claims determined to be patentable.

The United States Patent and Trademark Office conducted a reexamination of the patent claims of the Burstein Patents being asserted in this case. The references that will be presented to you were available to the Patent Office. The United States Patent and Trademark Office has concluded reexamination of both patents and issued a certificate of reexamination for both patents confirming the asserted claims.

3

# JURY INSTRUCTION NO. 3
## SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Plaintiff Volterra Semiconductor Corporation and Defendants Infineon Technologies AG, Infineon Technologies North America, and Primarion, Inc. Infineon Technologies North America and Primarion are owned by Infineon Technologies AG. The case involves two United States patents issued to Andrew Burstein and Charles Nickel (deceased), and assigned by Messrs. Burstein and Nickel to Plaintiff Volterra. The patents involved in this case are United States Patent Numbers 6,278,264 and 6,462,522, both of which list Burstein and Nickel as the inventors. For convenience, the parties and I will often refer to these patents as the '264 Patent and the '522 Patent, being the last three numbers of their patent number. We may also refer to these patents collectively as the Burstein Patents.

Plaintiff Volterra filed suit in this court against Defendants Infineon and Primarion for infringing the '264 and '522 Patents. Volterra alleged that the Defendants' products the PX4640, PX4642, PX4650, and PX4652 infringe certain claims of the '264 Patent and the '522 Patent. Specifically, Volterra alleged that Claims 9, 11, 16, 17, 18, 19, 22 and 24 of the '522 Patent and Claims 26 and 34 of the '264 Patent are infringed by Defendants. These claims may be referred to as the "Asserted Claims."

It is my job as judge to determine the meaning of any claim language that needs interpretation. I have already done this. Based on this Court's interpretation, it has already been determined that Defendants' products infringe all of the Asserted Claims. You will therefore not have to decide any issues relating to infringement, as that has already been determined.

A party that infringes a patent is permitted to argue in federal court that the patent's claims are invalid. Defendants contend that the Asserted Claims of the Patents are invalid.

The jury's task in this trial is to determine whether the Asserted Claims are invalid. You must accept the meanings of claim terms I give you and use them when you decide whether any of the asserted claims are invalid.

4

# JURY INSTRUCTION NO. 4
## OVERVIEW OF APPLICABLE LAW

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The issue you will be asked to decide is whether the Asserted Claims are invalid. A patent claim may be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention. You will need to consider a number of questions in deciding whether the alleged inventions claimed in the Asserted Claims are obvious. You will be asked to determine whether Claims 26 and 34 of the '264 Patent and Claims 9, 11, 16, 17, 18, 19, 22, and 24 of the '522 Patent are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

You will also be asked whether the Asserted Claims are invalid for failing to satisfy the written description requirement. A patent claim may be invalid if the written description in the patent does not show a person of ordinary skill in the art that the patent application described the invention as claimed. You will need to consider a number of questions in deciding whether the alleged inventions claimed in the Asserted Claims satisfy the written description requirement. You will be asked to determine whether Claims 26 and 34 of the '264 Patent and Claims 9, 11, 16, 17, 18, 19, 22, and 24 of the '522 Patent satisfy the written description requirement. I will provide you detailed instructions on these questions at the conclusion of the case.

## JURY INSTRUCTION NO. 5
## OUTLINE OF TRIAL

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. The standard of proof that you will apply is called clear and convincing evidence.

Primarion and Infineon will present their evidence that the Asserted Claims of the '264 and '522 patents are invalid. To prove invalidity, Primarion and Infineon must persuade you by clear and convincing evidence that the claim is invalid.

Volterra will go next and will put on evidence responding to Primarion and Infineon's contention that the Asserted Claims of the '264 and '522 patents are invalid.

Finally, Primarion and Infineon will put on "rebuttal evidence." Rebuttal evidence is any evidence offered by Primarion and Infineon to respond to the evidence Volterra has put forward on the validity of the Asserted Claims of the '264 and '522 patents.

Because the evidence is introduced in pieces, you need to keep an open mind as the evidence comes in and wait for all the evidence before you begin to make any decisions. In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments. Closing arguments are not evidence. Rather, they are an opportunity for the attorneys for the parties to summarize the evidence you have heard and seen and point you to particular parts of the evidence they think are important. After the instructions and closing arguments, you will then decide the case.