UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLTERRA SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PRIMARION, INC., ET AL.,<br><br>Defendants.<br>_____/ | Case No. C-08-05129 JCS<br><br>**ORDER RE:**<br><br>**1) VOLTERRA'S FED.R. CIV. PROC. 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW OF NONOBVIOUSNESS OF CLAIMS 9, 11, 16 -19, 22 AND 24 OF THE '522 PATENT AND CLAIMS 26 AND 34 OF THE '264 PATENT AND MOTION TO STRIKE EXPERT TESTIMONY OF DR. RICHARD FAIR [Docket No. 1571]**<br><br>**2) VOLTERRA'S MOTION UNDER FED.R. CIV. PROC. 50(a) FOR JUDGMENT AS A MATTER OF LAW OF NONOBVIOUSNESS AT THE CLOSE OF EVIDENCE OF CLAIMS 9, 11, 16-19, 22 AND 24 OF THE '522 PATENT AND CLAIMS 26 AND 34 OF THE '264 PATENT [Docket No. 1589]**<br><br>**3) DEFENDANTS' FED. R. CIV. P. 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW OF OBVIOUSNESS OF CLAIMS 9, 11, 16 -19, 22 AND 24 OF THE '522 PATENT AND CLAIMS 26 AND 34 OF THE '264 PATENT [Docket No. 1581]** |

## I. INTRODUCTION

At the close of Defendants' case and again at the close of evidence, Volterra brought motions seeking judgment as a matter of law as to Defendants' obviousness defense (hereinafter, the "Plaintiff's Obviousness JMOL Motions"), pursuant to Rule 50(a)(1) of the Federal Rules of Civil

Procedure. Defendants, in turn, brought a motion for judgment as a matter of law on their obviousness defense at the close of Plaintiff's case (hereinafter, "Defendants' Obviousness JMOL Motion"). On the record of the trial, the Court GRANTED Plaintiff's Obviousness JMOL Motions as to the Metalized Pad Claims, that is, Claims 22 and 24 of U.S. Patent No. 6,462,522 ("the '522 patent") and Claims 26 and 34 of U.S. Patent No. 5,278,264 ("the '264 patent"), and denied Plaintiff's JMOL Obviousness JMOL Motions in all other respects. The Court denied Defendants' Obviousness JMOL Motion. The Court indicated that a formal order would follow after the trial. This Order sets forth the reasons for the Court's ruling in favor of Volterra with respect to the Metalized Pad Claims.[1]

## II. BACKGROUND

At trial, Defendants presented two obviousness combinations. First, as to Claims 26 and 34 of the '264 patent and Claims 22 and 24 of the '522 patent (the Metalized Pad Claims), Defendants relied on the following prior art references in support of their obviousness defense: 1) "A Low-Voltage CMOS DC-DC Converter for a Portable Battery-Operated System," IEEE (1994) by Stratakos et al. ("Stratakos 1994"); 2) "Chip on Board Technologies for Multichip Technologies," by John Lau published by Chapman & Hall in 1994 ("Lau 1994"); and 3) U.S. Patent No. 5,412,239 to Williams ("Williams"). Second, as to Claims 9, 11 and 16-19 of the '522 patent (the Flip Chip Claims), Defendants presented evidence that these claims were obvious in light of Stratakos 1994 and Lau 1994.

With respect to the Metalized Pad Claims, Defendants presented the testimony of their expert, Dr. Fair, to show that all of the elements of these claims were disclosed in the prior art. Dr. Fair testified that Stratakos 1994 disclosed the following claim elements: 1) "an integrated chip with a power switch for a voltage regulator fabricated thereon," 5/10/11 Transcript at 375-376; 2) "a substrate having a first plurality of doped regions and a second plurality of doped regions, the first and second pluralities of doped regions arranged in a first alternating pattern," 5/10/11 Transcript at 376-377; and 3) "a gate region on the substrate," 5/10/11 Transcript at 384-385. Dr. Fair further

---

[1] The parties also filed Rule 50 motions seeking judgment as a matter of law as to Defendants' written description defense, which has been addressed in a separate order.

2

testified that Lau 1994 disclosed a "metalized pad" and that Dr. Szepesi agreed with this opinion. 5/10/11 Transcript at 392.

Dr. Fair testified that Williams disclosed the limitation requiring an "array" of pads arranged in an "alternating pattern." 5/10/11 Transcript at 388.[2] Although Dr. Fair conceded that the word "pad" does not appear in Williams, 5/11/11 Transcript at 433, he testified that a person of ordinary skill in the art would find that Figure 12 of Williams disclosed a "pad" and that Figure 1 showed the "alternating pattern" called for in the Metalized Pad Claims. With respect to the pad, Dr. Fair's opinion shifted during the course of the trial. On direct examination, he identified Element 91 of Figure 12 of Williams as a "pad." 5/10/11 Transcript at 398. On cross-examination, however, Dr. Fair conceded that Williams did not teach a top passivation layer above Element 91, as required under the Court's construction of "metalized pad." 5/10/11 Transcript at 433-435. He then took the position that the "pad" in Williams was the exposed portion of Element 90 and the area defined by Element 93, with Element 92 on either side. 5/10/11 Transcript at 430; 5/11/11 Transcript at 533-534. He identified Element 92 as a passivation layer. 5/11/11 Transcript at 534. He conceded, however, that Element 90 was described in the specification of Williams as a "first metal layer" that was located beneath both Element 91 and Element 93. 5/10/11 Transcript at 431-432. Dr. Fair testified that in order to find that Elements 90 and 93 of Williams constituted a "pad," a person of ordinary skill in the art would have to "transform" Williams by removing the second metal layer. 5/19/11 Trial Transcript at 1616-1617. He also conceded that Williams contained no teaching or suggestion that Element 91 was optional or should be omitted. 5/1911 Transcript at 1616.

Dr. Fair testified that the "array" of pads arranged in an "alternating pattern" was disclosed in Figure 1 of Williams. 5/10/11 Transcript at 386. He testified that although Figure 1 did not

---

[2] Although Dr. Fair had stated in his Opening Report on Validity, as well as in the appendices attached thereto, that Williams disclosed *metalized* pads, he did not respond to Dr. Szepesi's assertion, in his Reply Report on Validity, that Williams did not disclose a UBM and therefore did not disclose a metalized pad under the Court's construction of that claim term. Accordingly, the Court granted Volterra's Motion in Limine No. 4 to the extent that it precluded Defendants from presenting testimony that Williams disclosed "*metalized* pads." However, the Court permitted Defendants to present testimony by Dr. Fair that Williams disclosed "pads" arranged in an "alternating pattern." At trial, Dr. Fair testified that the repeated statements in his expert report and attached appendices that Williams disclosed "metalized pads," as opposed to "pads," was "a typo." *See* 5/10/11 Transcript at 426.

3

1  disclose pads, it did show an alternating pattern of doped regions with contacts and it would be
2  obvious to a person of ordinary skill in the art that there would be pads on top of the doped regions.
3  5/10/11 Transcript at 436-438.

4       Dr. Fair testified that the "solder ball" element of claim 34 of the '264 Patent was disclosed
5  in Lau 1994.  5/10/11 Transcript at 407.

6       With respect to the Flip Chip Claims, Dr. Fair testified that Stratakos 1994 disclosed all of
7  the elements of these claims except flip chip.  5/10/11 Transcript at 308 -343.  Drs. Fair and Garrou
8  also offered testimony that Stratakos 1994 disclosed "chip-on-board" packaging, which Lau 1994
9  taught included three types of packaging, namely, wire bonding, tape automated bonding ("TAB"),
10 and flip chip.  5/10/11 Transcript at 352-356; 5/11/11 Transcript at 614-617.  Dr. Fair testified
11 further that a person of ordinary skill in the art would have had a reason to combine Stratakos 1994
12 with Lau 1994 to eliminate the problem of resistance discussed in Stratakos 1994.  5/10/11
13 Transcript at 365.

14      In its Obviousness JMOL Motions, Volterra argued that judgment should be entered in its
15 favor pursuant to Rule 50(a) of the Federal Rules of Civil Procedure because the jury could not
16 reasonably find by clear and convincing evidence that either the Metalized Pad Claims or the Flip
17 Chip Claims are obvious in light of the prior art cited above, based on the evidence and testimony
18 presented at trial.  Volterra further moved to strike Dr. Fair's opinions addressing the Williams
19 patent and whether a person skilled in the art would have thought it obvious to combine Stratakos
20 1994 with flip chip packaging.

21      With respect to the Metalized Pad Claims, Volterra argued that Defendants failed to present
22 sufficient evidence to make a prima facie showing that the prior art disclosed a "pad" or an "array"
23 of pads arranged in an "alternating pattern."  To the extent that Defendants presented testimony by
24 their expert, Dr. Fair, that Williams disclosed these limitations, Volterra asserted that this testimony
25 was insufficient because it was contradictory and confusing, as well as being inconsistent with the
26 specification and figures of Williams.  For this reason, Volterra also requested that this testimony be
27 stricken.
28

1 As to Dr. Fair's reliance on Figure 12 to show a pad, Volterra cited Dr. Fair's initial testimony that Element 91 in Figure 12 of Williams was a pad, arguing that this element cannot be a pad because the specification describes Element 91 as a "second metal layer" and there is no teaching that there is a top passivation layer above Element 91, as Dr. Fair conceded. According to Volterra, Dr. Fair's subsequent testimony that Elements 90 and 93 of Figure 12 constituted a pad also fails because it contradicts the express teaching of Williams, which defines Element 90 as a "first metal layer" that is located beneath Element 93 (described by Dr. Fair as a via) and Element 91. Volterra asserted that a pad cannot sit beneath a second metal layer. Volterra argued that Dr. Fair conceded this point when he admitted, on cross-examination, that a person skilled in the art would see a pad in Figure 12 only by "transforming" that figure by imagining that the second metal layer shown in it was not there. Volterra also pointed to Dr. Fair's own demonstrative exhibit, Slide 116. Dr. Fair explained that this slide showed a "pad," depicted as an opening in the top passivation layer through which a connection was made, from above the top passivation layer, to the top metal layer, which is *below* the top passivation layer. Slide 116 & 5/10/11 Transcript at 391-392.

Volterra further argued that to the extent Williams did not disclose a "pad," the claim limitation requiring an "array" of pads arranged in an alternating pattern also was not taught by Williams. Volterra pointed out that Dr. Fair conceded at trial that Figure 1 does not show an array of pads arranged in an alternating pattern but rather, shows an array of metal contacts. At best, Volterra argued, Williams teaches an alternating pattern of doped regions with contacts, which would not be sufficient to support a jury verdict in Defendants' favor on this question. In addition, as to Claim 34 of the '264 patent, Volterra argued that the only evidence that the solder balls taught in Lau 1994 were "interleaved," as required under that claim, came from the array of pads arranged in an alternating pattern that Defendants asserted was taught by Williams. Thus, to the extent that Williams did not disclose the alternating pattern of pads, Defendants also failed to meet their burden as to the interleaved solder ball limitation.

Finally, Volterra argued that the obviousness defense failed as a matter of law as to the Metalized Pad Claims because Defendants failed to present any evidence addressing why a person of ordinary skill in the art would combine Williams with Stratakos 1994 or Lau 1994.

As to the Flip Chip Claims, Volterra argued that Defendants' evidence was insufficient because: 1) Defendants' experts admitted that the definition of "chip on board" is unclear and therefore Defendants' evidence established, at best, that a person of ordinary skill in the art *may* have considered using flip chip packaging as one of the three possible types of chip on board bonding methods when viewing Stratakos 1994; 2) the testimony offered by Dr. Fair that it would have been obvious to combine flip chip packaging with a power switch for a voltage regulator was not reliable because he improperly failed to consider the known drawbacks of such a combination; and 3) the testimony of Dr. Garrou as to motivation to combine was baseless because he had no knowledge of voltage regulators or whether the alleged solutions to known drawbacks of combining would work in a voltage regulator.

Defendants asserted in their opposition brief and in their own Obviousness JMOL Motion that judgment should be entered in their favor on the obviousness defenses because the evidence of obviousness presented at trial was overwhelming and Volterra failed to rebut this evidence with relevant evidence of secondary considerations showing nonobviousness. Defendants further asserted that Volterra's request that the Court strike Dr. Fair's testimony on the basis that he failed to consider the known disadvantages of flip chip, rendering that testimony unreliable, should be denied because the Court already rejected this argument when it denied Volterra's Motion in Limine No. 3.

With respect to the Metalized Pad Claims, Defendants contended that they presented sufficient evidence at trial to support a jury finding that Williams disclosed "pads" and "an 'array' of pads or pad-like metal contacts 'arranged in an alternating pattern,'" Docket No. 1561 at 4, and that Lau 1994 and Stratakos 1994 disclosed the remaining limitations of Claims 22 and 24 of the '522 patent and Claim 26 and 34 of the '264 Patent. In particular, they cited Dr. Fair's testimony that Figure 12 of Williams disclosed a pad and Figure 1 taught an array of pads arranged in an alternating pattern. With respect to Claim 34 of the '264 patent, Defendants argued that the interleaved solder ball limitation was met because Lau 1994 disclosed the solder balls while the interleaved arrangement of the solder balls would have been obvious in light of the array of metal contacts taught by Williams.

With respect to the Flip Chip Claims, Defendants asserted that they had presented considerable and unrebutted evidence of obviousness based on the testimony of Drs. Fair and Garrou that: 1) Stratakos 1994 contained all but one element of these claims (use of flip chip packaging); 2) Lau 1994 disclosed this remaining element; and 3) the two references would be natural to combine. Defendants argued that Volterra's arguments concerning the reliability of the testimony of Drs. Fair and Garrou regarding the motivation to combine were the same ones that the Court had rejected in connection with Volterra's Motions in Limine Nos. 2 and 3 and should be rejected again for the same reasons.

Defendants also argued that although Volterra presented evidence of secondary considerations such as commercial success, copying, long-felt need and industry praise and/or skepticism, in an effort to rebut Defendants' prima facie case of obviousness, this evidence was not sufficient to create a jury question because it did not establish a nexus between the claimed features of the asserted patents and the secondary considerations of nonobviousness.

On the trial record, the Court denied Volterra's request that Dr. Fair's testimony be stricken as unreliable on the grounds that it had already ruled on this request when it denied Volterra's Motion in Limine No. 3. The Court also ruled, based on careful consideration of the evidence presented a trial and cited by the parties in their briefs, that fact questions remained as to Defendants' obviousness defense as it related to the Flip Chip Claims and on that basis denied both Plaintiff's and Defendants' JMOL motions as to that defense. Finally, the Court held that Volterra was entitled to judgment as a matter of law that Defendants' obviousness defense failed as to the Metalized Pad Claims. The Court sets forth below the reasons for this last ruling.

## III.  ANALYSIS

### A.  Legal Standard

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a court may grant a motion for judgment as a matter of law ("JMOL") against a party on a claim or issue where the party has been "fully heard on [that] issue during a jury trial" and the court finds that a "reasonable jury would not have a legally sufficient evidentiary basis" to find for that party. Fed.R. Civ. P. 50(a). Where a party moves for JMOL in a case that has been tried to a jury, the court must determine whether

"there exists evidence of record upon which a jury might properly have returned a verdict in [the non-movant's] favor when the correct legal standard is applied." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995) (quotations omitted).  In deciding a motion under Rule 50(a), the court does not weigh evidence and all reasonable inferences are drawn in favor of the nonmoving party.  *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554 (1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A JMOL Motion should be granted "when the evidence permits only one reasonable conclusion as to the verdict." *McGonigle v. Combs*, 968 F.2d 810, 816 (9th Cir. 1992).

The standard regarding obviousness is set forth in 35 U.S.C. § 103(a), which provides, in relevant part, as follows:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a).  In *Graham v. John Deere Co.*, the Supreme Court instructed courts to address the question of obviousness against the "background" of three inquiries: 1) the scope and content of the prior art; 2) differences between the prior art and the claims at issue; and 3) the level of ordinary skill in the pertinent art. 383 U.S. 1, 17 (1966).  In addition, under *Graham* courts are to consider "secondary considerations" that may be relevant to obviousness, such as "commercial success" and "long felt but unsolved needs."  *Id*.  In order to be relevant, there must be a nexus between these secondary considerations and the claimed invention.  *Ormco Corp. v. Align Tech. Inc.*, 463 F.3d 1299, 1311-1312 (Fed. Cir. 2006) (holding that commercial success was not relevant to obviousness because it was due to unclaimed features and features that were not novel).

Obviousness must be proved by clear and convincing evidence.  *Procter & Gamble Company v. Teva Pharmaceuticals USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009).  "In an obviousness determination, some evidentiary support must be offered beyond an expert's conclusory opinion."  *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 1358 (Fed. Cir. 2001) (cert. granted, judgment vacated and remanded on other grounds, 538 U.S. 974 (2003) and

opinion modified and reinstated, 345 F.3d 1366 (2003)); *see also KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness") (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (finding that expert testimony was not sufficient to defeat JMOL because expert's opinion was not supported by sufficient facts to support jury verdict); *see also Lear Automotive Dearborn, Inc. v. Johnson Controls, Inc.*, 696 F.Supp.2d 863, 872 (E.D. Mich. 2010) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. . . . Rather, a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

### C. Whether a Jury Could Find by Clear and Convincing Evidence that the Metalized Pad Claims Were Obvious in Light of Stratakos 1994, Lau 1994 and Williams

The Court found at the close of evidence that the evidence and testimony presented by Defendants at trial was insufficient to support a jury verdict in Defendants' favor as to the Metalized Pad Claims. The Court's conclusion is based on the fact that although Dr. Fair offered conclusory testimony that Williams disclosed both a "pad" and an "array" of pads arranged in an alternating pattern, the specific testimony offered by Dr. Fair in support of these opinions contradicted his own prior testimony, the Court's claim construction and the specification and figures of the Williams patent.

Dr. Fair relied on Figure 12 of Williams to show a pad, but it is clear from the figure and the Williams specification that the elements that he identified, Elements 90 and 93, cannot be a pad because they are beneath what is clearly identified as the second metal layer. Similarly, the passivation layer identified by Dr. Fair, Element 92, cannot be the top passivation layer, as required

9

1 by the Court's claim construction, because it is *under* the second metal layer. Indeed, Dr. Fair
2 recognized that the second metal layer could not be located *over* the pad, explaining in connection
3 with Slide 116 that the pad is an opening in the top passivation layer, which is located *over* the top
4 metal layer. Further, Dr. Fair conceded that in order to find a pad in Figure 12, a person of ordinary
5 skill in the art would have to ignore the second metal layer depicted in that figure. He did not,
6 however, offer any testimony explaining why such a person would read Williams in this manner and
7 he acknowledged that Williams contained no such teaching.

8 Likewise, Dr. Fair relied on Figure 1 to show an array of pads arranged in an alternating
9 pattern even though he conceded that Figure 1 depicted an array of metal contacts, rather than pads,
10 arranged in an alternating pattern. Because Williams does not disclose pads, however, Dr. Fair's
11 testimony is insufficient to support a finding by the jury that Figure 1 discloses an "array of pads."
12 Defendants essentially conceded this point in their Opposition brief, arguing that "Dr. Fair clearly
13 testified that Williams discloses an array of metal contacts – whether they are 'pads' within the
14 meaning of the Court's construction of that term or not." Docket No. 1561 at 7. Although Dr. Fair
15 suggested that a person of skill in the art would simply know that Figure 1 disclosed an "array" of
16 pads in an alternating pattern, he did not specifically identify any prior art that would have led a
17 person of ordinary skill in the art to read Williams in this manner.[3] As a result, Dr. Fair's testimony
18 is insufficient to show that Williams disclosed an "array" of pads. Moreover, because Defendants
19 relied on the "array" of pads arranged in an alternating pattern alleged to exist in Williams in order
20 to show that the prior art disclosed solder balls (taught in Lau 1994) that were "interleaved,"
21 Defendants have also failed to show that the interleaved solder ball element of Claim 34 existed in
22 the prior art.

23 Because Defendants failed to show that all the limitations of the Metalized Pad Claims were
24 present in the prior art, Volterra is entitled to JMOL as to Defendants' obviousness defense relating

---

[3] In opposition to Volterra's JMOL Motion, Defendants argued, for the first time, that even if Williams did not disclose an array of pads arranged in an alternating pattern, Williams combined with Lau 1994 disclosed this claim element. *See* Docket No. 1561 at 7. Subsequently, Defendants withdrew this argument, however, apparently recognizing that this new opinion had not been timely disclosed and therefore was precluded under the Patent Local Rules.

to these claims. *See Fresenius USA, Inc. v. Baxter International, Inc.*, 582 F.3d 1288, 1300 (Fed. Cir. 2009) (holding that district court properly granted the plaintiff's JMOL motion as to invalidity defense because party challenging patent's validity failed to present evidence that all of the elements of the claims that were at issue were present in the prior art). The Court, therefore, does not reach the question of whether the evidence was sufficient for a jury to reasonably conclude that there was a motivation to combine.

## IV. CONCLUSION

For the reasons stated above, Volterra's Obviousness JMOL Motions are GRANTED as to the Metalized Pad Claims and DENIED in all other respects. Defendants' Obviousness JMOL Motion is DENIED.

IT IS SO ORDERED.

Dated: June 30, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge