UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLTERRA SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PRIMARION, INC., ET AL.,<br><br>Defendants.<br>_____/ | Case No. C-08-05129 JCS<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL [Docket No. 1624]** |

## I. INTRODUCTION

Defendants bring a Motion for Judgment as a Matter of Law for a New Trial ("Motion"), asserting that: 1) they are entitled to judgment as a matter of law, or in the alternative, a new trial, on obviousness with respect to claims 9, 11, and 16-19 of the '522 Patent ("the flip-chip claims"); and 2) they are entitled to a new trial on obviousness as to claims 22 and 24 of the '522 patent and claims 26 and 34 of the '264 patent ("the metalized pad claims"). A hearing on the Motion was held on Friday, September 9, 2011 at 9:30 a.m. For the reasons stated below, the Motion is DENIED.

## II. BACKGROUND

### A. Procedural Background

In May 2011, a three-week jury trial was conducted in this action. Prior to trial, it had already been determined that under the Court's claim construction, Defendants' accused products infringed the asserted claims. Thus, the only issue to be decided by the jury was whether the asserted claims were invalid. At the outset of the trial, the questions that were to be decided by the jury were: 1) whether the metalized pad claims were obvious in light of prior art; 2) whether the flip-chip claims were obvious in light of prior art; and 3) whether the asserted claims satisfied the written description requirement. At the close of evidence, however, the Court granted judgment as a matter

of law (JMOL) in favor of Volterra as to the first and third issues, holding that the metalized pad claims were non-obvious and that the asserted claims were supported by adequate written description. The question of whether the flip-chip claims were obvious in light of the prior art went to the jury and the jury entered a verdict in favor of Volterra, finding that they were not obvious.

### B. The Motion

In the Motion, Defendants make the following arguments:

1) The Court should enter JMOL that the flip-chip claims are obvious because that is the only reasonable conclusion based on evidence presented at trial; at a minimum, a new trial should be conducted on this question because the clear weight of the evidence supported Defendants' position.

2) A new trial is warranted because the Court: a) erred in granting JMOL that the metalized pad claims are non-obvious; b) erred in granting JMOL that the asserted claims satisfy the written description requirement; c) issued erroneous and prejudicial evidentiary rulings; and d) gave erroneous jury instructions.

Voltera argues that:

1) the jury's verdict as to the flip-chip claims is supported by ample evidence of non-obviousness and therefore should not be overturned;

2) the Court properly granted JMOL that the metalized pad claims are nonobvious and that the asserted claims satisfy the written description requirement;

3) the Court's evidentiary rulings were correct and any purported errors were nonprejudicial; and

4) none of the Court's jury instructions justifies a new trial.

## III. ANALYSIS

### A. Legal Standard on Motion for Judgment as a Matter of Law

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a court may grant a motion for judgment as a matter of law against a party on a claim or issue where the party has been "fully heard on [that] issue during a jury trial" and the court finds that a "reasonable jury would not have a legally sufficient evidentiary basis" to find for that party. Fed.R. Civ. P. 50(a)& (b). Where a party moves for JMOL in a case that has been tried to a jury, the court must determine whether "there

1 exists evidence of record upon which a jury might properly have returned a verdict in [the non-
2 movant's] favor when *the correct legal standard is applied.*" *Markman v. Westview Instruments,*
3 *Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995) (quoting *Jamesbury Corp. v. Litton Indus. Prods., Inc.,*, 756
4 F.2d 1556, 1560 (Fed. Cir. 1985) (emphasis added in *Markman*)); *see also White v. Ford Motor Co.*,
5 312 F.3d 998, 1010 (9th Cir. 2002)(holding that on a Rule 50 motion, "[t]he test is whether the
6 evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable
7 conclusion, and that conclusion is contrary to that of the jury). Thus, the court must conduct two
8 inquiries. *Markman*, 52 F.3d at 975. First, the court must determine the correct law. *Id*. Next, the
9 Court must review the jury's factual findings to determine whether they are supported by substantial
10 evidence. *Id*. While the jury's factual findings are given "substantial deference," the legal
11 standards the jury applies are considered *de novo* to determine, as a matter of law, whether the
12 correct standards have been used. *Id*.

### B. Legal Standard on Motion for New Trial

Even where the court finds that JMOL is not appropriate, it may order a new trial under Rule 59 of the Federal Rules of Civil Procedure. Rule 59 provides that a court may, following a jury trial, order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). "Historically recognized grounds include but are not limited to 'claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)(quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

The Ninth Circuit has held that a new trial may be granted "'only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Id*. (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). In contrast to JMOL motions, in determining whether a verdict is contrary to the clear weight of the evidence, the court "has 'the duty . . . to weigh the evidence as [the court] saw it'" and may set aside the verdict even if it is supported by substantial evidence. *Id*. at 729 (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

### C. Whether the Court Should Enter JMOL or Order a New Trial on Whether The Flip-Chip Claims are Obvious

Defendants assert that the evidence put forth at trial clearly demonstrated that the flip-chip claims are obvious, warranting JMOL in their favor or at least, a new trial on this question. The Court disagrees.

In support of their request for JMOL or a new trial on the flip-chip claims, Defendants point to the testimony of Drs. Fair and Garrou, asserting that it establishes that Stratakos 1994 disclosed all but the flip-chip element of these claims, that Lau 1994 disclosed the remaining element, and that the two references would have been "natural to combine." Motion at 3. Defendants note that even Volterra's expert did not did not deny that Stratakos 1994 disclosed all but the flip-chip element. Further, they cite to the testimony of their experts that Stratakos 1994 discloses chip-on-board ("COB") packaging, that POSITA would likely have consulted Lau 1994 as to the meaning of COB, and that Lau described flip chip as one of the three types of COB packaging, the other two being wire-bonded and Tape Automated Bonding ("TAB"). *Id*. According to Defendants, the evidence presented at trial established that "Stratakos 1994 and Lau 1994 would have been natural for a person of ordinary skill in the art to combine" because "there was a known problem with packaging an integrated circuit for a power switch—parasitic resistance [– and] [t]here was also an obvious solution—flip chip—which is the sole COB packaging technique disclosed in Lau 1994 that avoids the wire-bonding resistance problem." *Id*. at 3. At a minimum, Defendants assert, the evidence established that "the combination of Lau 1994 and Stratakos 1994 was obvious to try." *Id*.

The evidence presented at trial to show non-obviousness, however, was substantial. As Volterra points out, "[i]t was undisputed that, prior to Andrew Burstein and Charles Nickel, no one had used or even considered using flip chip packaging with an integrated circuit including a power switch for a voltage regulator." Opposition at 2. Further, Volterra presented extensive evidence that a person of ordinary skill in the art ("POSITA") would not have been motivated to make such a combination due to the numerous technical drawbacks of such a combination, especially in the context of a power switch for a voltage regulator. *Id*. at 2-3. In addition, Volterra presented substantial evidence that Stratakos 1994 taught the use of wire-bonding, not flip chip, and that

4

POSITA would have understood COB, especially as used in Stratakos 1994, to refer to wire-bonded solutions. *Id*. at 3. Finally, Volterra presented a great deal of evidence as to the objective indicia of non-obviousness, including evidence of: 1) the commercial success of Volterra's products practicing the invention; 2) a long felt need for the solution offered by the claimed invention; 3) unsuccessful attempts by others, including Infineon, to develop their own solution; 4) Primarion's attempts to copy Volterra's chips that practiced the invention; 5) unexpected and superior results; 6) skepticism that Volterra's solution would work in light of concerns about CTE mismatch and electromigration; and 7) surprise and disbelief when it did. *Id*. at 6-10.

In light of the extensive evidence on the question of non-obviousness, as well as the clear and convincing standard that applies to the question of obviousness, the Court DENIES Defendants' request for JMOL or a new trial on the question of whether the flip-chip claims were obvious.

### D. Whether the Court Erred in Granting JMOL that Metalized Pad Claims are Nonobvious

Defendants assert that they are entitled to a new trial on the ground that the Court erred in granting JMOL in favor of Volterra that the metalized pad claims are not obvious. According to Defendants, a jury could reasonably have found that Defendants had made out a prima facie case of obviousness and that Volterra's evidence as to secondary considerations was insufficient to rebut their prima facie case. The Court concludes that Defendants are incorrect.

In its June 30, 2011 Order ("June 30 Order"), the Court explained that the evidence and testimony presented by Defendants at trial was insufficient to support a jury verdict in Defendants' favor as to the metalized pad claims because a jury could not reasonably find that the Williams prior art reference disclosed the claim elements requiring pads, an array of pads in an alternating pattern, or interleaved solder balls. June 30 Order at 9. In particular, the Court found that "although Dr. Fair offered conclusory testimony that Williams disclosed both a 'pad' and an 'array' of pads arranged in an alternating pattern, the specific testimony offered by Dr. Fair in support of these opinions contradicted his own prior testimony, the Court's claim construction and the specification and figures of the Williams patent." *Id*.

Defendants contend that the jury should have been permitted to decide whether to credit Dr. Fair's testimony that Williams disclosed the claim elements cited above, even if other testimony by Dr. Fair may have contradicted this opinion. Defendants further assert that regardless of Dr. Fair's testimony, the jury could have relied on the Williams prior art reference itself as a basis for finding that it disclosed the claim elements listed above. The Court disagrees. Dr. Fair's conclusory statements are not a sufficient basis to support a jury finding that Williams disclosed the claim elements listed above; nor is the Williams patent itself sufficient to support a jury finding in support of Defendants' position. *See Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004)("General and conclusory [expert] testimony . . . does not suffice as substantial evidence of invalidity . . . This is so even when the reference has been submitted into evidence before the jury"); *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2009 U.S. Dist. LEXIS 5765, at *27-28 (N.D. Cal. Jan. 16, 2009) ("Introducing the prior art reference into evidence is *not* a substitute; a challenger must 'articulate how [a prior art] references anticipates or makes obvious the [claim at issue].'") (emphasis in original). The Court therefore rejects Defendants' argument that they are entitled to a new trial on this basis.

### E. Whether the Court Erred in Granting JMOL that the Asserted Claims Meet the Written Description Requirement

Defendants assert that they are entitled to a new trial on the ground that the Court erred in granting JMOL in favor of Volterra on the question of whether the asserted claims satisfy the written description requirement. According to Defendants, the Court erred in: 1) relying on testimony by Dr. Fair at trial that the claims were invalid because the Burstein patents did not describe the type of transistors used in the accused products, that is, PMOS and NMOS transistors; and 2) rejecting their argument that the written description requirement must be satisfied as to LDMOS "patterning." Defendants assert that the testimony linking written description to the accused products is irrelevant because Defendants also introduced evidence sufficient to support a jury finding in their favor that the patent specification fails to disclose the full breadth of the patent claim terms, regardless of what type of transistors is used in the accused product. Defendants further assert that the Court's finding as to LDMOS patterning is incorrect as a legal matter because the Federal Circuit has held that the

specification must convey possession of the full scope of the invention. *See Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) ("the specification must . . . show that the inventor actually invented the invention claimed."). The Court rejects Defendants' arguments for the same reason it granted JMOL on this issue, namely, that the "claimed invention" under the Court's claim construction did not require any particular type of transistor or doped region "patterning."

The Court also agrees with Volterra that JMOL in its favor was warranted because "even if the inventors were required to disclose an embodiment of 'doped regions' in an 'alternating pattern' found in an LDMOS transistor, they did, because uncontradicted evidence showed that LDMOS transistors are within the PMOS and NMOS transistor families described in the specification." Opposition at 13 (citing 5/18/11 Tr. (Ex. G) at 1282:11-22, 1285:2-12; 5/13/11 Tr. (Ex. D) at 868:10-869:6; Dkt. No. 1590 at 19-20). Indeed, Defendants' expert, Dr. Fair, testified that the infringing device, which includes an LDMOS transistor, is described in the datasheet for the device as an "N-Channel MOSFET" (NMOS) switch. *See* 5/11/11 Tr. (Ex. C) at 514:20-517:3.

### F. Whether a New Trial is Required Due to Erroneous Evidentiary Rulings

Defendants assert that they are entitled to a new trial on the basis of the Court's evidentiary rulings relating to: 1) the reexamination proceeding before the PTO; 2) secondary considerations of nonobviousness; 3) obviousness of the flip-chip claims; 4) some experts' personal knowledge concerning flip chip as COB; 5) Dr. Baker's expert testimony; and 6) rebuttal evidence regarding effect of shorter wires on resistance. District courts have broad discretion in admitting evidence. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). "A new trial is only warranted on the basis of an incorrect evidentiary ruling if the ruling substantially prejudiced a party." *U.S. v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992). The Court concludes that under this standard, the rulings cited by Defendants do not justify a new trial.

#### 1. Reexamination Proceedings

Defendants assert that the Court erred in allowing Volterra to introduce evidence relating to the reexamination proceedings in the PTO, and in particular, the PTO's decisions affirming the validity of the Burstein patents, while precluding Defendants from introducing evidence that the

7

1  PTO construed the asserted claims more narrowly than the Court did in its claim construction.
2  Defendants argue that the PTO's decision was irrelevant under Rule 402 of the Federal Rules of
3  Evidence (because the PTO used different claim constructions) and highly prejudicial under Rule
4  403. The Court disagrees.

The Federal Circuit has held that final determinations by the PTO must be considered, particularly when the challenge in the reexamination proceeding was based on the same prior art as is at issue in the litigation. *See PowerOasis v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed.Cir. 2008); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984); *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1560 (Fed. Cir. 1986) (same); *Medtronic Vascular Inc. v. Abbott Cardiovascular Sys., Inc.*, 614 F. Supp. 2d 1006, 1014, 1024 (N.D. Cal. 2009). Therefore, Volterra was entitled to introduce evidence that the PTO upheld the claims of the Burstein patents over the same prior art.

On the other hand, it is improper for the Court or the jury to look behind the PTO's decision to speculate about the examiner's understanding of the claims or reasoning. *See Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1329 (Fed. Cir. 2004) ("[i]ntrospection and speculation into the examiner's understanding of the prior art or the completeness or correctness of the examination process is not part of the objective review of patentability"). Because the examiner is not required to set forth on the record the claim constructions used in making final determinations on validity – and did not do so in this case – Defendants' position that the PTO relied on narrower constructions than did the Court is speculative and inappropriate for presentation to the jury.

Finally, even if the Court's evidentiary ruling on this question was incorrect, the Court further finds that Defendants have not demonstrated that they were substantially prejudiced in light of the whole record.

### 2. Secondary Considerations of Nonobviousness

Defendants argue that the Court made a number of erroneous evidentiary rulings in connection with Volterra's evidence of secondary considerations, including: 1) denying Defendants' Motion in Limine No. 3, thereby permitting Volterra to introduce evidence of secondary considerations without demonstrating a nexus between the evidence and the asserted claims; 2)

8

1 allowing Volterra to elicit unreliable testimony from Dr. Lidsky about whether Volterra's products
2 practice features of the asserted claims and regarding CTE mismatch; 3) permitting Dr. Teuscher to
3 testify about the same issues even though these were subjects for expert testimony and Dr. Teuscher
4 was not designated as an expert on these topics; and 4) overruling Defendants' hearsay objections in
5 connection with emails addressing customer reaction to flip chip technology and industry praise
6 (Trial Exhibits 933 and 779). The Court rejects Defendants' contentions.

With respect to its ruling on Defendants' Motion in Limine No. 3, the Court denied Defendants' request to preclude all of Volterra's evidence of secondary consideration but stated in its pretrial order that Volterra would be required to lay a proper foundation at trial in support of its objective indicia evidence. Defendants do not identify any specific evidence as to which a proper foundation was not laid and therefore, Defendants have not shown that a new trial is warranted on this ground.

As to Dr. Lidsky's testimony that Volterra's products practice the features of the asserted claims, this testimony was supported by an adequate foundation because Dr. Lidsky had extensive knowledge of both Volterra's products and the Burstein patents. Moreover, Dr. Lidsky's testimony about CTE mismatch was merely testimony about his own personal experience at Volterra, where he had difficulty debugging flip chip integrated circuit chips and conducting studies on reliability. Even if the testimony were characterized as expert testimony, its admission does not give rise to substantial prejudice because many other witnesses testifying on behalf of Volterra, including experts, testified extensively about CTE mismatch.[1]

The Court's rulings regarding Dr. Teuscher also do not justify a new trial. Dr. Teuscher testified about his personal involvement in the development of Volterra's products, not as an expert on whether those products practiced the features of the claimed invention. In any event, Defendants have not established that Dr. Teuscher's testimony resulted in substantial prejudice, especially in light of the testimony of Dr. Lidsky.

---

[1] Because the Court finds that Dr. Lidsky's testimony did not give rise to substantial prejudice to Defendants it does not reach the question of whether Defendants' objection was adequately preserved on the basis of their motion in limine and their objection at trial several days *after* Dr. Lidsky's testimony.

9

1    The admission of Trial Exhibits 933 and 779 also do not entitle Defendants to a new trial.
2 Exhibit 933 – a 2007 email by a Primarion engineer stating that customers would choose wire-
3 bonding over a flip chip technology because the former was "mainstream" – duplicates testimony by
4 Dr. Garrou that at the time of the invention, customers would have had technical concerns about
5 using flip chip technology in power switches because it was new and had known drawbacks.
6 5/18/11 Transcript at 1231-1232. Therefore, the admission of Trial Exhibit 933 did not give rise to
7 substantial prejudice, regardless of whether or not its admission was erroneous.

8    With respect to Trial Exhibit 779 – an email sent from Intel to Volterra providing technical
9 guidelines – Volterra laid a foundation at trial establishing that the email was admissible under the
10 business record exception to the hearsay rule. *See* 5/13/11 Trial Transcript at 698-700. In any
11 event, Defendants have not shown that the admission of the email gave rise to substantial prejudice.

### 3. Obviousness of Flip-Chip Claims

13    Defendants argue that they are entitled to a new trial because the Court improperly: 1)
14 precluded Dr. Fair from relying on the Elenius Patent to show the metalized pad and solder ball
15 limitations; 2) precluded Defendants from presenting evidence that Dr. Stratakos' PhD thesis was
16 publicly available before October 7, 1999; and 3) permitted Volterra to introduce references that are
17 not prior art and to introduce testimony by Dr. Bravman that, based on those references, COB does
18 not encompass flip chip. *See* 5/11/11 Transcript at 966-969 & Trial Exhibits 1109 and 488. These
19 evidentiary rulings do not justify a new trial.

20    First, as to Elenius, Dr. Fair never previously relied on Elenius to show that the metalized
21 pad and solder ball elements were known in the art and therefore, the Court's ruling was proper
22 under the Patent Local Rules and the Court's own case management order. *See* Docket No. 711. In
23 any event, the ruling did not give rise to substantial prejudice because the Court permitted
24 Defendants to use Lau 1994 to show that these elements were known in the prior art.

25    Second, contrary to Defendants' assertion that the Court precluded them from presenting
26 evidence that Dr. Stratakos' PhD thesis was publicly available before October 7, 1999, the Court in
27 fact allowed Defendants to argue that it was available as of April 1999. *See* Final Pretrial Order at 6.
28 Defendants, however, chose not to present such evidence, instead stipulating that the date of

1 invention was April 1998. Therefore, Defendants waived any objection they may have had as to
2 exclusion of the Stratakos Thesis. *See Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684,
3 689 (9th Cir. 2001) (quoting *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 (3d Cir. 1997)
4 ("[W]here a district court makes a tentative in limine ruling excluding evidence, the exclusion of that
5 evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at
6 trial.")).

Third, admission of Trial Exhibits 1109 and 488 and the testimony of Dr. Bravman in connection with those exhibits do not entitle Defendants to a new trial. Regardless of whether or not these references were admitted in error, their admission does not give rise to substantial prejudice because Dr. Bravman's opinion was based upon a number of other references to which Defendants have not objected. *See* 5/16/11 Trial Transcript at 961-965, 969-973; 5/18/11 Trial Transcript at 1241-1245, 1246-1247 & Trial Exhibits 489, 552, 1696 and 1970.

### 4. Experts' Personal Knowledge Concerning Flip Chip as COB

Defendants contend that they are entitled to a new trial on the basis that the Court permitted Volterra to elicit testimony from experts as to whether they personally had heard the term COB used to refer to flip chip at the time of the invention. The Court disagrees. Defendants rely upon *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001) for the proposition that personal knowledge is irrelevant to an expert's opinion of what a person skilled in the art would have understood. *See* Defendants' Motion to Preclude Argument Based on Personal Knowledge of Experts, Docket No. 1588. Defendants' reading of that case is overly broad. The *Amazon.com* case holds that whether an expert may have "personally" thought of combining prior art references is irrelevant to whether an invention is obvious; it *does not* hold that an expert cannot take into consideration his or her own knowledge about the industry in deciding how a person skilled in the art would understand a particular claim term. Indeed, such a holding would run counter to Rule 703 of the Federal Rules of Evidence, which provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."

### 5. Dr. Baker's Expert Testimony

Defendants object that the Court erred in allowing Volterra to play to the jury "highly prejudicial" video deposition testimony of Dr. Baker that he had not heard of flip chip being referred to as COB at the time of the invention. The Court rejects Defendants' position. First, the Court precluded Volterra from informing the jury that Dr. Baker was Defendants' former expert, thereby mitigating any prejudice that might have arisen had the jury been aware of Dr. Bakers' past involvement in the case. Second, to the extent that Dr. Baker's opinion was echoed by the opinions of other experts (as Defendants concede), it was, at worst, cumulative. Admission of Dr. Baker's testimony therefore does not entitle Defendants to a new trial.

### 6. Rebuttal Evidence Regarding Effect of Shorter Wires on Resistance

Defendants assert that they are entitled to a new trial on the ground that the Court did not permit Defendants to introduce rebuttal testimony by Dr. Garrou in response to testimony by Dr. Szepesi that in a wire-bonded COB approach, the use of shorter wires could reduce resistance – an opinion that Defendants assert was entirely new. The Court disagrees. Whether or not the ruling was correct – a question the Court need not reach – no substantial prejudice resulted from the ruling because the jury also heard Dr. Fair's deposition testimony conceding that "using shorter bond wires in a custom lead frame in MCM package or shorter wire bonds in COB technology would significantly reduce, i.e., virtually eliminate the efficiency loss described in [Stratakos 1994]." Fisher Decl., Ex. M (5/11/11 Trial Transcript at 499).

### G. Whether New Trial is required Due to Erroneous Jury Instructions

Defendants point to six instructions or proposed instructions that they assert were erroneous or inadequate and require a new trial: 1) Instruction No. 18, regarding the reexamination proceeding; 2) Instruction No. 17, regarding burden of proof; 3) Instruction No. 20, regarding secondary considerations; 4) Defendants' proposed instruction regarding irrelevance of intent of author of prior art (which the Court declined to give); 5) Instruction No. 19, regarding unclaimed features of products; and 6) Instruction No. 25, describing claim constructions. A new trial is warranted on the basis of erroneous jury instructions where the error "clearly misled the jury." *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247, 1258 (Fed. Cir. 2004); *see also KeyStone Retaining Wall Sys., Inc.*

1 *v. Westrock, Inc.,* 997 F.2d 1444, 1448 (Fed. Cir. 1993)("In the Ninth Circuit, no prejudicial error
2 exists if, considering the charge as a whole, the court's instructions fairly and adequately covered the
3 issues presented, correctly stated the law, and were not misleading") (quotation omitted).  However,
4 a party seeking a new trial must also demonstrate that: 1) it "properly objected to the instruction the
5 court gave," *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2009 U.S. Dist. LEXIS 5765, at * 57 (N.D.
6 Cal. Jan. 16., 2009) (citing Fed. R. Civ. P. 51(d)(1)(A)); and 2) it "requested alternative instructions
7 which could have corrected the flaws." *Chiron*, 363 F.3d at 1258.  Applying this standard, the
8 Court finds that Defendants are not entitled to a new trial on the basis of the alleged errors in the
9 Court's instructions.

### 1. Instruction No. 18, regarding the reexamination proceeding

Defendants assert that the Court erred not only by permitting Volterra to introduce evidence about the reexamination proceeding but also by highlighting the reexamination in its instructions by instructing the jury that it "must consider the fact that the United States Patent and Trademark Office, on reexamination, has found that the asserted claims are valid" while at the same time refusing to instruct the jury that the material facts before the Patent Office during the reexamination were different from those put before the jury.  In support of their position, Defendants cite a recent decision by the Supreme Court, *Microsoft v. i4i Ltd. P'ship*, 564 U.S. __, (June 9, 2011), slip op. at 17.  The Court is not persuaded by Defendants' position.

As discussed above, it is well established that final determinations by the PTO *must* be considered when the challenge in the reexamination proceeding was based on the same prior art as is at issue in the litigation. *See PowerOasis v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed.Cir. 2008); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984); *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1560 (Fed. Cir. 1986) (same); *Medtronic Vascular Inc. v. Abbott Cardiovascular Sys., Inc.*, 614 F. Supp. 2d 1006, 1014, 1024 (N.D. Cal. 2009). Furthermore, the *Microsoft* case cited by Defendants is distinguishable.  In that case, the Court considered whether the clear and convincing standard applies to invalidity where the prior art at issue was not presented to the PTO in the reexamination. *Microsoft v. i4i Ltd. P'ship*, 564 U.S. __, (June 9, 2011), slip op. at 12.  Although the Court concluded that that standard applied,

1  regardless of whether or not the prior art had been presented to the PTO, it noted that the burden of
2  establishing invalidity by clear and convincing evidence might be lighter if the prior art at issue had
3  not been considered by the PTO, noting as follows:

> When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had *no opportunity* to evaluate before granting the patent. When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence.

*Id*, at * 35-36 (emphasis added).  In this case, the record reflects that all of the prior art at issue in this litigation was also before the PTO.  Because the PTO had the opportunity to review the same prior art as was at issue in this litigation, the Court did not err in declining to give the instruction requested by Defendants with respect to the reexamination.

### 2. Instruction No. 17, regarding burden of proof

Defendants assert that the Court erred in instructing the jury as to the burden of proof by using the words "abiding conviction" and referring in addition to the "statutory presumption of validity," even though the standard of proof and the presumption of validity are "a single hurdle to be cleared." *Chiron*, 363 F.3d at 1259.  Defendants are incorrect.  In its instruction, the Court did not present the presumption of validity as a separate hurdle that must be met in addition to the clear and convincing standard.  Rather, it explained that the clear and convincing standard "is used because a patent is entitled to a statutory presumption of validity until it is proven invalid by clear and convincing evidence."  Further, in light of the clear and convincing standard that applies to invalidity, Defendants' assertion that the words "abiding conviction" are misleading is not persuasive.  Indeed, the Federal Circuit has held that "'[c]lear and convincing' evidence is evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed.Cir.1993) (citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1983)).

14

### 3. Instruction No. 20, regarding secondary considerations[2]

Defendants assert that they are entitled to a new trial because the Court improperly instructed the jury as to objective indicia of non-obviousness by: 1) instructing the jury that it "must" consider objective indicia of nonobviousness; 2) refusing to instruct the jury that there must be a nexus between the asserted claims and the secondary considerations; and 3) instructing the jury that it must consider "whether persons expressed surprise, skepticism or disbelief regarding the inventions." Defendants' arguments are unpersuasive.

The Federal Circuit has "repeatedly held that evidence of secondary considerations must be considered if present." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010) (citing *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed.Cir.2000)). The Court's instruction mirrored that rule, including the qualification that the jury "must" consider only those secondary considerations that the jury "find[s] have been shown by the evidence." This qualification is reiterated later in the instruction when the Court states, "Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you."

The Court also rejects Defendants' assertion that it erred in rejecting a proposed instruction referring to a "nexus" between the claimed invention and the various secondary considerations. While the Court did not use the word "nexus" in its instruction, the requirement that the secondary considerations must arise due to the claimed invention is adequately conveyed by the instruction, which specifies that each secondary consideration must be linked to the claimed invention.

Finally, the instruction that the jury should consider "skepticism" is consistent with decisions by the Federal Circuit holding that skepticism about an invention is relevant to obviousness. *See, e.g., Metabolite Laboratories, Inc. v. Laboratory Corp. of America*, 370 F.3d 1354, 1368 (Fed. Cir. 2004) (denying request for JMOL on obviousness based in part on evidence showing that skilled artisans were initially skeptical about the invention); *Hughes Tool Co. v. Dresser Indus., Inc.*, 816 F.2d 1549, 1556 (Fed. Cir.1987) (initial skepticism of experts is relevant to nonobviousness).

---

[2] In their Motion and Reply briefs, Defendants refer to the instruction addressing secondary considerations as Instruction No. 22. In fact, it is Instruction No. 20.

### 4. Defendants' proposed instruction regarding irrelevance of intent of author of prior art

Defendants assert that the Court erred when it refused to instruct the jury that the intent of an author of prior art is not relevant to obviousness – an instruction they argued was necessary in light of Dr. Stratakos' testimony that his 1994 Article did not envision flip chip. The Court rejects Defendants' argument because the instruction proposed by Defendants was overly broad, instructing that "in deciding the level of knowledge of a person of ordinary skill in the art, you should not consider evidence of the subjective intent of an author as to the meaning of any prior art reference." Docket No. 1583, Ex. A. Such an instruction would have misled the jury by suggesting that it could not have considered testimony by Dr. Stratakos addressing the background and circumstances of Stratakos 1994. Further, Instruction No. 20, discussed above, provided adequate instruction on the proper analysis for determining obviousness. Finally, it is highly unlikely that the Court's failure to include this instruction misled the jury as Volterra was not permitted to argue in closing that Dr. Stratakos did not use the term "chip-on-board" in the 1994 Stratakos Article to refer to flip chip.

### 5. Instruction No. 19, regarding unclaimed features of products

Defendants argue that the Court erred with respect to Instruction No. 19 because it refused to instruct the jury that "unclaimed features are irrelevant to whether the claimed invention is obvious and should not be considered." Docket No. 1513 at 40. The Court rejects Defendants' contention because Instruction 19 clearly instructed the jury that it was to determine the difference between the prior art and the "claimed invention" in determining obviousness. Similarly, as discussed above, Instruction No. 20, addressing secondary considerations, linked the secondary considerations to the "claimed invention" as well. Therefore, the Court's decision not to instruct the jury that unclaimed features are irrelevant did not mislead the jury.

### 6. Instruction No. 25, describing claim constructions

Defendants assert that the Court erred in instructing the jury on the construction of the claim terms "doped region," "substrate," "mounted on," "maintain the DC voltage substantially constant" and "power switch" because the Court's constructions are incorrect. The Court rejects Defendants' position for the reasons set forth in its claim construction order. In addition, Defendants have not

offered any specific arguments explaining why the Court's constructions – as opposed to those proposed by Defendants – were misleading to the jury on the question of obviousness.

**IV. CONCLUSION**

For the reasons stated above, Defendants' Motion is DENIED.

IT IS SO ORDERED.

Dated: September 12, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge