UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLTERRA SEMICONDUCTOR CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PRIMARION, INC., et al.,<br><br>　　　　Defendants. | Case No. C-08-05129 JCS<br><br>**ORDER GRANTING MOTION FOR LEAVE TO SUBMIT REVISED OPENING EXPERT REPORTS ON DAMAGES** |

## I.　INTRODUCTION

Plaintiff Volterra Semiconductor Corporation ("Volterra") brings a Motion for Leave to Submit Revised Opening Expert Reports on Damages ("the Motion"). The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing set for Friday, December 7, 2012 at 9:30 a.m. is vacated. For the reasons stated below, the Motion is GRANTED.[1]

## II.　BACKGROUND

On May 23, 2012, Volterra discovered that its opening expert report on damages, served on May 14, 2012, contained a significant factual error, namely, the representation that all of the sales for which Volterra sought damages under a theory of price erosion were made directly by plaintiff Volterra Semiconductor Corporation. *See* Declaration of James W. Morando in Support of Volterra Semiconductor Corporation's Motion for Leave to Submit Revised Opening Expert Reports on Damages ("Morando Motion Decl."), ¶¶ 3-5. In fact, the vast majority of those sales were made by a Volterra subsidiary, Volterra Asia Pte. Ltd. ("Volterra Asia"). *Id.*, ¶¶ 5, 7.

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

Volterra Asia is a wholly owned subsidiary of Volterra International Ltd., which is, in turn, a wholly owned subsidiary of Plaintiff Volterra Semiconductor Corporation. *Id.*, ¶ 5. According to Volterra's counsel, this fact came to light when an investigation was undertaken in response to a letter from Defendants' counsel dated May 23, 2012 ("May 23 Letter"). *Id.*; *see also* May 23 Letter, Docket No. 1777-4.

Craig Teuscher, one of Volterra's founders and a current Volterra employee, states that he is the Volterra employee who had the most involvement in working with Volterra's outside counsel in connection with the damages phase of this case. Declaration of Craig Teuscher in Support of Volterra Semiconductor Corporation's Motion for Leave to Submit Revised Opening Expert Reports on Damages ("Teuscher Decl."), ¶ 2. Teuscher testified as Volterra's Rule 30(b)(6) witness on damages and also was interviewed by Volterra's damages expert, Mike Wagner. *Id.*, ¶ 2.

According to Teuscher, Volterra uses consolidated financial statements which combine the assets, liabilities, revenue and expenses of Volterra Semiconductor Corporation with those of its subsidiaries, including Volterra Asia. *Id.*, ¶ 4. Teuscher states that he does not, on a day-to-day basis, distinguish between the sales made by Volterra Semiconductor Corporation and Volterra Asia, either for the purposes of financial reporting or in connection with Volterra's sales and marketing efforts. *Id.*, ¶ 4. He states further that neither he nor anyone else at Volterra (to his knowledge) understood that there was "any significance or importance from the standpoint of Volterra's claim for damages against the Defendants in this case for their infringement of the Burstein Patents that many of the Volterra sales which were impacted by Defendants' infringement were actually made by Volterra's subsidiary [Volterra Asia] rather than directly by Volterra [Semiconductor Corporation]." *Id.*, ¶ 3. Consequently, at the time Volterra's expert finalized his opening expert report on damages, Mr. Wagner was "not aware that any of the sales addressed in [his] opening report which were the subject of Volterra's damages claims were made by a Volterra subsidiary rather than by Volterra Semiconductor Corporation." Declaration of Michael Wagner in Support of Volterra Semiconductor Corporation's Motion for Leave to Submit Revised Opening Expert Reports on Damages ("Wagner Decl."), ¶ 1. Similarly,

Volterra's outside counsel, James Morando, states that neither he nor his partner, Jeffrey Fisher – nor any other member of their firm who was working on the case – was aware that most of the sales that were the subject of Volterra's damages claim were made by Volterra Asia. Morando Decl., ¶ 4.

Volterra's counsel responded to the May 23 letter the next day, and on June 4 and 5, 2012 informed Defendants via email of what they had learned. Docket No. 1792-1. Volterra's counsel recognized that Volterra would need to supplement its response to Defendants' Interrogatory No. 4 – which asked Volterra to provide a complete description of the supply chain by which Volterra products are made, sold, and distributed – and to supplement its document production. *Id*. They also acknowledged that Defendants might need some additional discovery. *Id*. Volterra's counsel stated that they intended to update Mr. Wagner's expert report and proposed that the parties vacate the deadlines in the case, including the June 12, 2012 deadline for Defendants to submit their rebuttal expert report, to allow time for the additional discovery. *Id*.

On June 14, 2012, the Court vacated all dates in the case and permitted Volterra to file the instant motion.

## III. THE MOTION

In the Motion, Volterra seeks leave to amend its expert report pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, which gives the district court the discretion to allow a party to introduce an expert opinion that was not timely disclosed under Rule 26(a) where the failure to disclose was "substantially justified or is harmless." Motion at 7. According to Volterra, the Ninth Circuit has articulated four factors that district courts may consider in determining whether relief should be afforded under Rule 37(c)(1): "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Id*. at 8 (quoting *Lanard Toys Ltd. v. Novelty, Inc*., 375 Fed.Appx. 705, 713 (9th Cir. 2010)). Volterra contends that consideration of these four factors supports allowing it to submit revised opening expert reports and damages claims in this case. *Id*.

First, Volterra argues that permitting it to submit revised expert reports will not prejudice Defendants because they will have a full and adequate opportunity to respond to the revised reports. *Id*. at 9. Volterra points out that no expert depositions or discovery had occurred at the point that it discovered and alerted the Court of its need to submit revised reports, that the *Daubert* motions to challenge expert testimony were still "far down the road" and that there are no other pretrial dates because the Court has vacated the trial date. *Id*. According to Volterra, lack of prejudice has been found to be a key factor that supports excusing a Rule 26 violation under Rule 37(c)(1). *Id*. at 9-11 (citing *Lanard Toys,* 375 Fed. Appx. at 713; *Res-Care, Inc. v. Roto-Rooter Services*, 2010 WL 4072037 (N.D. Cal. Oct. 18, 2010) (Laporte, J.); *Wechsler v. Macke International Trade, Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004); *In re Zicam Cold Remedy Marketing*, 2011 WL 683882 (D. Ariz. Feb. 17, 2011)).

Volterra argues that the second factor, which asks whether any potential prejudice can be cured, also favors its request to submit amended opening expert reports on damages. *Id*. at 11-13. Because the trial date has been vacated, Volterra asserts, the Court can set new dates that will ensure that Defendants have ample time to respond to the amended expert reports and conduct any additional discovery required to ensure that Defendants suffer no prejudice. *Id*. at 12. Further, Volterra contends, the difference between a damages claim based on direct lost profits as compared to one that is based on price erosion on sales made through subsidiaries is not as great as Defendants have asserted. *Id*. According to Volterra, under either theory, the claim turns largely on evidence relating to the pricing and sales of the impacted Volterra products, which was the "primary focus" of Mr. Wagner's opening report. *Id*. Thus, the primary change in the revised reports will be the methodology used to calculate Volterra's damages. *Id*. at 13. Although Volterra does not anticipate a need for significant additional discovery in connection with the revised reports, it notes that time can be allowed in the schedule to permit such discovery. *Id*.

The third factor, whether the trial schedule will be disrupted if the Motion is granted, also favors Volterra's position, it asserts, because the trial schedule has been vacated. *Id*. at 13-14.

4

Finally, as to the fourth factor – whether Volterra's request was the result of bad faith – Volterra argues that there is no evidence that it had any intent to deceive and that the evidence shows that its mistake was simply the result of Volterra's consolidated accounting approach and the lack of understanding on the part of Volterra's employees of the legal significance of the distinction between sales by Volterra Semiconductor Corporation and sales by its subsidiaries. *Id*. at 14-15.

Volterra also argues that under § 284 of the Patent Act, damages to Volterra resulting from price erosion on sales made by Volterra Asia are recoverable. *Id*. at 15. To prevent Volterra from obtaining such damages would, in this case, constitute an extremely harsh sanction, Volterra contends, because those damages make up the overwhelming majority of the damages suffered by Volterra as a result of Defendants' infringement. *Id*. at 16-19. Such a sanction is inappropriate here, Volterra asserts, in light of the fact that any prejudice to Defendants can be mitigated and Volterra has not acted in bad faith. *Id*.

In their Opposition, Defendants argue that Volterra failed to meet its obligations under Rule 26 on multiple occasions over the course of this litigation, pointing to: 1) its failure to list its subsidiaries as interested entities at the outset of the action; 2) Volterra's statement at the preliminary injunction phase of the case that it had never licensed the Burstein patents; 3) its repeated representations that it was seeking damages based only on a lost profit theory based on its own sales; 4) Volterra's refusal and/or failure to provide discovery as to its subsidiaries or its supply chain, including its removal of the "segment" field from the shipment logs that were provided to Defendants, which distinguished between sales by Volterra and sales by Volterra Asia**.** Opposition at 1-10.

Defendants further contend that Volterra's failure to meet its obligations under Rule 26 with respect to its expert reports was neither substantially justified nor harmless and therefore, that Rule 37 requires automatic exclusion of all of Volterra's untimely disclosures. *Id*. at 10-13. Defendants argue that Volterra's mistake was not "substantially justified" because Volterra did not make reasonable inquiry to determine the facts, as required under Rule 26, even though the law is well-settled that a parent company patent holder may not recover lost profits damages

5

based on sales made by a subsidiary. *Id*. at 11-12 (citing *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), *Poly-America L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004)). In support of their assertion that Volterra should have known that further inquiry was appropriate, Defendants point to Volterra's SEC 10-K filings listing Volterra's subsidiaries, as well as sales documents produced by Volterra that carried the Volterra Asia address or logo. *Id*. at 12-13 (citing Declaration of Aaron Davidson ("Davidson Decl."), ¶ 2 & Ex. A (SEC 10-K filing) (excerpt), Declaration of Jeff Baxter ("Baxter Decl."), ¶ 25 (Volterra datasheet including contact information for Volterra Asia sales in footer), Davidson Decl., ¶ 7 (sales quote documents referencing Volterra Asia)).

Defendants argue that Volterra's failure to uncover the factual error regarding its sales of the affected product was not harmless. *Id*. at 13. First, Defendants contend that Volterra used its "unfounded lost profits theory" to obtain a "de facto injunction." *Id*. at 13-14. According to Defendants, Volterra's misrepresentations as to the source of the sales at issue deprived it of the opportunity to oppose Volterra's preliminary injunction motion on the basis that the alleged harm was to another entity. *Id*. at 13-14. Second, Defendants argue that they were harmed because Defendants wasted "substantial resources litigating Volterra's baseless lost profits claim." *Id*. at 14. Third, Defendants argue that they have been harmed because the trial has now been delayed as a result of the trial date having been vacated. *Id*. at 15. Fourth, Defendants assert that Volterra continues to delay with respect to its obligation to supplement its disclosures. *Id*. at 16. Fifth, Defendants contend that the additional discovery that will be required as a result of Volterra's new damages theory will be significant, contrary to Volterra's assertion that the revised reports will not necessitate substantial additional discovery. *Id*. at 17-18.

Defendants also challenge Volterra's position on the issue of bad faith, arguing that Volterra incorrectly asserts that a showing of bad faith is required in order to exclude its untimely expert reports. *Id*. at 19. In fact, Defendants contend, no such showing is required because exlusion of evidence is not the same as dismissal. *Id*. (citing *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). As Volterra concedes that it can still seek damages based on the price erosion associated with its own sales, Defendants assert, exclusion of

6

the revised reports addressing the sales of Volterra Asia is not "tantamount to dismisal" and therefore does not require a showing of bad faith. *Id*. (citing *Oracle U.S.A., Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009)). Even if a showing of bad faith were required, Defendants assert, there is evidence to support such a finding. *Id*. In particular, Defendants contend that Volterra had "countless opportunities to disclose the evidence it now seeks to produce and rely upon" and that its "consistent failure to do so . . . suggests willful decisions to avoid discovery on material evidence detrimental to Volterra's claims." *Id*. (citing *Alexander v. Archuleta*, 2010 WL 363390 (D. Colo. Jan. 27, 2010), *In re Mercedes-Benz Anti-Trust Litig.*, 225 F.R.D. 498, 507 (D.N.J. 2005)).

Finally, Defendants argue that exluding the revised expert reports is not a harsh sanction, as Volterra contends, because Volterra's damages theory as to the sales of Volterra Asia is vague and unlikely to succeed under the Federal Circuit's decision in *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995). *Id*. at 20-25. According to Defendants, *Rite-Hite* stands for the proposition that Volterra may not seek recovery of alleged economic and pecuniary harm due to its ownership interest in Volterra Asia. *Id*. at 21. Defendants also point to *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), which according to Defendants stands for the proposition that a parent corporation cannot recover the lost profits of its subsidiary. *Id*. at 22. Defendants contend that the only case cited by Volterra in which a parent has been permitted to recover damages based on harm to its subsidiaries is an "unpublished case from Arkansas currently on appeal" that was wrongly decided. *Id*. at 22-23 (citing *St. Jude Med., Inc. v. Access Closure, Inc.*, 2010 WL 4968147 (W.D. Ark. Dec. 1, 2010)).

In closing, Defendants assert that the two cases that are most factually on point are *Oracle U.S.A., Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) and *Ascion, L.L.C. v. RuoeyLung Enter. Corp.*, 817 F. Supp. 2d 5 (D. Mass 2011), and that both cases support exclusion of Volterra's revised expert reports. *Id*. at 25.

In its Reply brief, Volterra contends that the Motion should be granted because: 1) Defendants do not dispute that they will be able to respond fully to Volterra's revised damages methodology; and 2) they have not established that any other specific harm would result from

7

allowing Volterra to revise its expert reports. Reply at 3-11. With respect to the prejudice Defendants contend will result from delay of the trial if the Motion is granted, Volterra argues that Defendants' complaints ring hollow in light of their own actions in this case, including filing a motion for sanctions that led to a significant delay of the liability trial and was later found by the Court to be without merit. *Id.* at 9. Volterra also rejects Defendants' contention that they suffered harm in connection with the motion for a preliminary injunction, noting that no preliminary injunction was entered. *Id*. Volterra further asserts that Defendants' discontinuation of their sales of infringing products was not the result of an "ad hoc injunction" but rather, of Volterra's lowering of the price of its own products. *Id*. Volterra also argues that no prejudice resulted from its failure to disclose the license to Volterra Asia because the Court's substantive rulings have only addressed the questions of infringement and validity and the license to Volterra Asia has no bearing on those questions. *Id.* at 10.

Volterra rejects Defendants' assertion that it acted in bad faith and provides additional declarations relating to Volterra's alleged efforts to conceal the fact that most of its sales were made by Volterra Asia. *Id*. at 11-12. Volterra also argues that given the nominal value of the lost profits attributable to price erosion of products sold directly by Volterra, exclusion of the revised expert reports addressing the damages associated with Volterra Asia's sales would be tantamount to dismissal and therefore, would constitute an excessively harsh sanction in view of the lack of bad faith. *Id*. at 12-13.

Volterra argues that Defendants' challenge to its revised damages claim on the merits is premature but that in any event, it is not supported by Section 284 or the relevant case law of the Federal Circuit and the Supreme Court. *Id*. at 13-15.

## IV. ANALYSIS

### A. Legal Standard Under Rule 37(c)

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides, in part, as follows:

> **Failure to Disclose or Supplement**. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

8

>evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). The Ninth Circuit has set forth the following list of non-exclusive factors that district courts may consider in determining whether violation of a discovery deadline is "substantially justified or is harmless:"

>(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence.

*Lanard Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed.Appx. 705, 713 (9th Cir. 2010). Other factors courts have considered in determining whether exclusion sanctions should be imposed are the importance of the evidence to be excluded and the validity of the reason offered for failing to timely disclose the evidenc. *See Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904 (3d Cir. 1977)(overruled on other grounds in *Goodman v. Lukens Steel Co*., 777 F.2d 113 (3rd Cir.1985)).

The burden of establishing that relief is warranted is on the party facing sanctions. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1107 (9th Cir. 2001). District courts have broad discretion in determining whether sanctions should be imposed under Rule 37(c)(1). *Id*. at 1106 ("although we review every discovery sanction for an abuse of discretion, we give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)").[2]

### B. Whether the Court Should Exercise its Discretion under Rule 37(c)(1) to Permit Volterra to Submit Revised Opening Expert Reports on Damages

The Court has carefully reviewed the materials submitted by the parties in connection with the Motion and concludes, as set forth more fully below, that in light of the significance of the evidence at issue, the ability to cure any prejudice resulting from Volterra's mistake and ensure a

---

[2] The inquiry as to whether failure to comply with a deadline associated with Rule 26(a) disclosures was substantially justified or harmless tends to be highly fact-specific. For this reason, and because of the broad discretion afforded district courts, the cases cited by the parties provide only loose guidance to this Court regarding the question of whether Volterra should be granted the relief it requests. Accordingly, the Court does not address the facts of those cases here.

fair trial, and the lack of evidence showing that Volterra acted in bad faith or with any intent to mislead Defendants or the Court, that an exercise of discretion under Rule 37(c)(1) to permit Volteera to submit revised opening expert reports is warranted.

### 1. Prejudice and Ability to Cure

Defendants advance a variety of theories in support of their contention that Volterra's failure to timely disclose its new damages theory was not harmless. In particular, Defendants argue that they were harmed because: 1) Volterra used is "unfounded lost profits theory" to obtain a "de facto injunction"; 2) Defendants wasted substantial resources litigating Volterra's "baseless" lost profits claim; 3) the additional discovery that will be required as a result of Volterra's new damages theory will be significant; and 4) the trial has now been delayed as a result of the trial date having been vacated. The Court finds the harms alleged by Defendants to be exaggerated. Moreover, it is undisputed that a new schedule in the action will ensure that Defendants have a full and fair opportunity to respond to the revised opening expert reports Volterra seeks to submit.

First, Defendants' argument that they was subject to a "*de facto*" preliminary injunction in the early stages of this case because Volterra did not disclose that the majority (but not all) of its sales were made by a subsidiary and Defendants might have argued against entry of a preliminary injunction on that basis has no merit. No preliminary injunction was entered, as was made clear in the Court's written order. In any event, it is entirely speculative to suggest that Defendants might have sold more of their own products (which they later stipulated infringed the Burstein Patents) if they had been able to argue at the preliminary injunction stage that most of the sales by Volterra of its products practicing the Burstein Patents were sold by a Volterra subsidiary.

Second, Defendants' assertion that they have "wasted" resources litigating against Volterra's lost profits claim appears to be overstated. In the first place, Volterra continues to assert a lost profit claim, albeit for a greatly reduced amount of damages, based on the sales that Volterra made directly. More significantly, it is apparent that Volterra's claim for damages based on Volterra Asia's sales of affected products will be based, in part, on the damages suffered by Volterra as an indirect result of the price erosion Volterra Asia faced with respect to the affected

products. Thus, much of the discovery that has been conducted by Defendants would likely have been conducted even if Volterra had disclosed at an earlier stage of the case that the majority of its sales of affected products were by Volterra Asia rather than Volterra Semiconductor Corporation.

Similarly, Defendants may be overstating the amount of additional discovery that will be required to respond to Volterra's new damages theory. For example, Defendants contend that they will be required to repropound all of the prior discovery that was propouned on Volterra but Volterra has agreed to produce any additional documents that are responsive to Defendants' prior document requests in light of the new theory without the need for Defendants to propound new requests. *See* Reply Declaration of Jeffrey M. Fisher in Support of Volterra Semiconductor Corporation's Motion for Leave to Submit Revised Opening Expert Reports on Damages ("Fisher Reply Decl."), ¶ 14. The need to depose Volterra Asia employees about its role in setting prices also may not be as great as Defendants contend in light of the license agreements and the Service Agreement arrangements between Volterra and Volterra Asia. According to Volterra, these agreements make clear that it is Volterra Semiconductor Corporation and not Volaterra Asia that sets prices for the products sold by Volterra Asia. *See* Declaration of Mike Burns in Support of Volterra Semiconductor Corporation's Motion for Leave to Submit Revised Opening Expert Reports on Damages ("Burns Decl.") & Exs. A, B. In any event, the additional discovery necessary to address the new expert reports will be built into the revised schedule.

Finally, the Court rejects Defendants' assertion that the Motion should be denied on the basis that Defendants have been harmed by the delay that resulted from Volterra's mistake. The damages trial was delayed due to the Court's decision to vacate the trial date and all related dates. That decision was based, in part, on the Court's recognition that the result of precluding Volterra from submitting revised expert reports would be to effectively deny Volterra a remedy for Defendants' infringing conduct, that is, to impose sanctions "tantamount to dismissal." Under those circumstances, it was appropriate to provide the parties with a meaningful opportunity to address the question – something that could not be achieved under the tight trial schedule facing the parties and the Court. The Court notes that it gave Defendants the same opportunity during

1 the liability phase of this case when they filed a motion for sanctions in which they argued that
2 Volterra had engaged in wilfull misconduct in the parallel proceeding before the Patent and Trade
3 Office. Given the seriousness of the allegations, the Court vacated the trial date, only to find that
4 Defendants' motion lacked merit and that Defendants showed a "lack of diligence in ascertaining
5 the basic facts" upon which the motion was based. *See* Docket No. 1332. Having engaged in
6 motion practice that has resulted in significant (and unnecessary) delay in this action,
7 Defendants' assertions that the Court should deny Volterra's Motion based on the delay
8 associated with permitting it to submit revised expert reports is unpersuasive.

### 2. Disruption of the Trial

In determining whether evidence should be excluded under Rule 37(c)(1), courts also consider whether permitting a party to introduce the untimely material will disrupt the trial. Here, it will not because the Court has already vacated the trial as well as all pre-trial deadlines.

### 3. Importance of Evidence at Issue

The parties agree that the vast majority of affected sales identified by Plaintiff's expert in his original expert report on damages were made by Volterra Asia rather than Volterra. Thus, the evidence relating to those sales constitutes the primary evidence of Volterra's damages. Conversely, the evidence relating to damages associated with Volterra's direct sales of the affected product indicates that those damages are negligible in the context of this case. Therefore, the significance of the evidence Volterra seeks to introduce weighs in favor of permitting Volterra to revise its expert reports, especially in light of the policy favoring decisions on the merits. *See Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (among the factors to be considered in determining appropriate sanction is "the public policy favoring disposition of cases on their merits").[3]

---

[3] The Court rejects as premature Defendants' contention that damages based on the Volterra Asia sales are unavailable as a matter of law.

12

### 4. Validity of Reason for Failure to Comply and Whether Volterra Acted in Bad Faith

The Ninth Circuit has made clear that evidence may be excluded under Rule 37(c)(1) even if it may significantly weaken a party's case (or defense), so long exclusion is "less than a dismissal." *Yeti by Molly Ltd.*, 259 F.3d at 1106. However, where the sanction "amount[s] to dismissal of a claim, the district court [is] required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith." *R & R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012). As discussed above, the Court finds that preclusion of damages evidence relating to Volterra Asia's sales amounts to a dismissal sanction. Therefore, it must consider whether there is evidence of bad faith or willful misconduct. The Court has carefully reviewed the extensive evidence provided by the parties on this question. With the benefit of hindsight, it is clear that Volterra's counsel should have conducted a more careful investigation as to the source of the sales that were claimed as the basis for its damages. Nonetheless, the Court finds that Volterra's mistake, while surprising, was not the result of any bad faith or wilfull misconduct.

## V. CONCLUSION

For the reasons stated above, the Motion is GRANTED. The parties shall meet and confer and submit a proposed trial schedule for the damages phase of the case on the Burstein patents no later than Friday, December 14, 2012. A Case Management Conference shall be conducted on Friday, December 21, 2012 at 10:30 a.m. Parties who wish to appear telephonically should make arrangements to do so with Karen Hom at (415) 522-2035.

Dated: November 27, 2012

_____
Joseph C. Spero
United States Magistrate Judge